[File No. 6253.]

STATE OF NORTH DAKOTA EX REL. R. E. WENZEL, a Member of the Workmen's Compensation Bureau of North Dakota, Appellant, v. WILLIAM LANGER, as Governor of the State of North Dakota, and T. J. Clifford, as Special Commissioner, Respondents.

(256 N. W. 194.)

Opinion filed August 14, 1934.

*George F. Shafer,* for appellant.

*P. O. Sathre,* Attorney General, *Charles A. Verret,* Assistant Attorney General, and *S. E. Ellsworth,* Special Assistant Attorney General, for respondents.

CHRISTIANSON, J. This is an appeal from a part of an order made by the district court of Burleigh County in a certiorari proceeding. The facts necessary to an understanding of the questions presented are substantially these: The relator Wenzel was a member of the Workmen's Compensation Bureau. The term of office for which he had been appointed will not expire until January 14, 1935. On October 26, 1933, the respondent, the then Governor of the State of North Dakota, made an order suspending the relator from such office pending a hearing upon certain charges of alleged misconduct and neglect of duty which the Governor (in the order of suspension) stated had been filed with him by the Attorney General. The relator thereupon instituted this proceeding in certiorari. The application for the writ recited the foregoing facts; also that the governor, after the issuance and service of the purported order of suspension had appointed one Pfeifer to serve as a member of the Workmen's Compensation Bureau in place of said relator until the final determination of the removal proceedings. The petition for the writ further alleged that on the 4th day of November, 1933, there was served upon the relator a pretended notice to take testimony and a certain complaint; also that the Governor had appointed one Clifford special commissioner to report the testimony in the removal proceedings. It was further alleged that all these acts of the governor were in excess of his jurisdiction and without authority of and contrary to law. It was asked that a writ of certiorari be issued directing the governor and the said Clifford, special commissioner, to certify to the court a full and true copy and transcript of the record and proceedings had "relating to the purported suspension from office of the said R. E. Wenzel, as a member of the Workmen's Compensation Bureau of North Dakota, relating to the appointment of the said J. E. Pfeifer, as a successor to the said R. E. Wenzel as a member of the said workmen's compensation bureau, and all records and proceedings heretofore taken and had relating to the purported proceeding to remove the said R. E. Wenzel, as a member of the said workmen's compensation bureau, that the same may be reviewed by the court and

such action taken thereon as the law and justice may require; and that in the meantime, the said defendants and respondents, William Langer, as Governor of the State of North Dakota, and T. J. Clifford, as Special Commissioner, and each of them, be ordered and required to desist from any further proceedings in said matters to be reviewed."

An order to show cause was issued. The parties thereupon entered into a stipulation that a writ of certiorari might issue and that the defendant should make a return containing a record of all the proceedings had in the proceeding to remove the relator from office. It was further stipulated that a hearing be waived and that the district judge, who had been designated to try the case, might make decision pursuant to the memorandum opinion which he had formerly filed. A return was made to the writ of certiorari admitting that the proceedings were had as stated in the application, and alleging that the governor, in making the order of suspension and in appointing the commissioner to take the testimony was acting within the authority conferred upon him by law; and further alleging that the relator had a plain, speedy and adequate remedy at law.

The trial court made its decision as follows:

(1) That the order made by Governor Langer on October 26, 1933, purporting to suspend the relator Wenzel from the office of the workmen's compensation bureau was in excess of the jurisdiction of the governor and hence void.

(2) That the order made by the governor appointing one Pfeifer as successor to the relator Wenzel until the termination of the removal proceedings was in excess of the governor's jurisdiction and hence void.

(3) That the governor had no jurisdiction to proceed with removal proceedings under §§ 685 to 695, Comp. Laws 1913, inclusive.

(4) That the governor did have jurisdiction to hear a removal proceeding under the provisions of the statute creating the workmen's compensation bureau and that the governor might proceed with removal proceedings under that statute.

At the threshold of the case we are met with a motion on the part of the respondents to dismiss the appeal on the ground that the relator had accepted certain benefits under the order sought to be appealed from; that he resumed possession of the office of workmen's compensation commissioner, discharged the duties thereof and received salary

as such officer and that consequently he is estopped from assailing any part of the order on appeal. The rule which the respondents seek to invoke is well settled, but in our opinion the facts in this case do not bring it within the rule. Corpus Juris says:

"Subject to the exceptions and qualifications hereafter stated, the general rule is that a party who enforces, or otherwise accepts the benefit of, a judgment, order, or decree cannot afterward maintain an appeal or writ of error to review the same or deny the authority which granted it. A party cannot avail himself of that portion of an indivisible judgment, order, or decree which is favorable to him, and secure its fruits, while prosecuting an appeal to reverse in the appellate court such portions as militate against him. . . . The rule does not apply . . . where the parts of the judgment or decree are separate and independent, and the receipt of a benefit from one part is not inconsistent with an appeal from another, or where the right to the benefit received is conceded by the opposite party or appellant is entitled thereto in any event, so that it could not be denied if the portions of the judgment or decree granting it should be reversed, or in other cases in which the acceptance of the benefit or partial enforcement of the judgment is not inconsistent with an appeal and reversal." 3 C. J. 679, 680.

So far as the record discloses no order had been entered in this case when the governor revoked the order of suspension and the appointment of Pfeifer. The governor's revocation of the order of suspension and of the appointment were attached to and made a part of the return to the writ of certiorari and the order appealed from was not entered until almost a month after the governor had made his written order revoking the order suspending Wenzel and the appointment of Pfeifer. In short, revocation of the order of suspension and the appointment of Pfeifer was an accomplished fact almost a month before the order in question here was entered; and so far as the record discloses the relator was in full possession of the office before such order was made. The order involved on this appeal was divisible. It related to certain distinct matters. The order of suspension was not an essential part of the removal proceeding. It was merely an incident to that proceeding. In a given case an order of suspension may be valid or invalid without regard to whether a removal is ultimately ordered. In this case the trial court ruled that the governor was wholly without power to enter

an order of suspension; that such order was void and that consequently the appointment made to fill the vacancy said to have been created by the order of suspension was also a nullity. The governor accepted as correct the announcement made by the trial court and he (the governor) made a written order revoking the order of suspension and the appointment long before a final order was entered. In short, he in effect conceded that he had been in error, and by his order revoking the suspension and annulling the appointment the suspension ceased to be a matter in controversy. At the time the order appealed from was entered there remained only one question in dispute, namely, whether the governor did or did not have jurisdiction to entertain the proceeding looking toward the removal of the relator. The reversal on appeal of that part of the order holding that the governor had such jurisdiction could not possibly annul any of the so-called benefits which the relator had received. Tyler v. Shea, 4 N. D. 377–382, 61 N. W. 468; Boyle v. Boyle, 19 N. D. 524, 126 N. W. 229. See also 3 C. J. p. 682. There was no such acceptance of benefits as precludes the relator from appealing from that portion of the order which he challenges on this appeal.

This brings us to the merits of the controversy. The first and the great question presented for determination is whether the governor has any power to remove for cause a member of the Workmen's Compensation Bureau. The second and incidental question, is whether the governor may proceed to hear the removal proceeding upon the charges which form the basis of the present proceeding. The answers to these questions must be found in the legislative enactments of the state relating to the removal of a Workmen's Compensation Commissioner.

The Workmen's Compensation Bureau was created in 1919. Laws 1919, Chap. 162. The original act provided:

"A workmen's compensation bureau is hereby created in the Department of Agriculture and Labor, consisting of the Commissioner of Agriculture and Labor and two workmen's compensation commissioners, to be appointed by the Governor, who shall devote their entire time to the duties of the Bureau. Prior to April 1, 1919, the Governor shall appoint, and may remove for cause, two workmen's compensation commissioners, . . . The Commissioner of Agriculture and Labor shall be ex-officio head of the Bureau."

: The statute was again amended by the legislative assembly at the special session held in November and December, 1919, and provision was made for three workmen's compensation commissioners, to be appointed by the governor, and the Commissioner of Insurance was made an ex-officio member of the Bureau. However, the language contained in the original enactment relating to the appointment and removal of workmen's compensation commissioners remained unchanged.

The statute was next amended by the legislative assembly in 1927 to read as follows:

"A Workmen's Compensation Bureau is hereby created in the Department of Agriculture and Labor, consisting of the State Commissioner of Agriculture and Labor, the State Insurance Commissioner and three (3) Workmen's Compensation Commissioners to be appointed by the Governor, and the three commissioners so appointed shall devote their entire time to the duties of the Bureau. . . . One of the appointees of the said Bureau shall be a representative of labor, and one of the appointees of the said Bureau shall be a representative of the public, and one of the appointees of the said Bureau shall be a representative of the employers; provided, that the Governor may remove for cause, any or all commissioners so appointed by him. The Commissioner of Agriculture and Labor shall be ex-officio chairman of the Bureau, the Commissioner of Insurance shall be ex-officio member of the Bureau, . . ." Laws 1927, c. 285.

It was again amended in 1931 to read thus:

"A Workmen's Compensation Bureau is hereby created, consisting of three (3) Workmen's Compensation Commissioners to be appointed by the Governor. The Commissioners shall devote their entire time to the duties of the Bureau. One of the Commissioners shall be a representative of labor, one shall be a representative of the public, and one shall be a representative of the employers. Any or all of the Commissioners may be removed for cause.

Such newly re-organized Bureau shall at its first meeting held in July, A. D., 1931, and biennially thereafter at its first July meeting, select from its membership a chairman of such Bureau, who shall act in such capacity for a term of two years, or until his successor is selected and qualified." Laws 1931, c. 314.

It will be noted that the Workmen's Compensation Act has always

contained a provision that a Workmen's Compensation Commissioner may be removed for cause. The original enactment, and the amendatory acts enacted in 1919 and 1927 specifically provided that the governor might remove a Workmen's Compensation Commissioner for cause. The legislative enactment of 1931 also provided that a Workmen's Compensation Commissioner may be removed for cause; but it does not say in so many words where the power of removal is vested. It is the amendment of 1931 that gives rise to the principal question presented in this controversy. It is the contention of the appellant that inasmuch as the law in force prior to 1931 provided that the Governor might remove a compensation commissioner, that the elimination by the legislative assembly in 1931 of reference to the governor evidences a legislative intention to deprive the governor of the power of removal. A careful consideration of the question leads us to the conclusion that this contention is incorrect. The legislative enactment of 1931 was not restricted to a change in the language as regards removal. The entire section was re-written. The Workmen's Compensation Bureau was no longer placed in the Department of Agriculture and Labor, with the Commissioner of Agriculture and Labor as ex-officio chairman. All relations with the Department of Agriculture and Labor were severed. The Commissioner of Agriculture and Labor and the State Insurance Commissioner ceased to be members; the membership of the Bureau was restricted to the three appointive members, and the chairman was required to be chosen from such membership. We do not have a situation therefore where a statute is amended by making one specific change. The changes made in the section as regards the membership of the Bureau were of great importance. The change in the language of the provision relating to the removal of a workmen's compensation commissioner clearly was not the main purpose the legislature had in mind in redrafting the section. The legislature provided that the members of the Bureau should be appointed by the governor. The power of appointment was made absolute. It was not made dependent upon the advice or consent of the Senate. Under the enactment of 1931 the governor appointed all the members of the workmen's compensation bureau, not merely three out of five members as formerly. The section conferring the power of appointment upon the governor also provided that the workmen's compensation commissioners might be removed for

cause. In what person or tribunal did the legislature intend that the power of removal should be vested?

The section made no express mention of the person or tribunal before whom the removal proceedings should be had. It made no provision for the procedure to be employed. In the latter respect it is precisely the same as the former enactments relating to the removal of workmen's compensation commissioners. It must be presumed that the legislature intended that the provision for the removal of a workmen's compensation commissioner should be effective and that the language providing for removal should not be merely a dead letter. Hence, the legislative assembly must have intended that the power of removal should continue as it had under some law in existence when the statute of 1931 was introduced and enacted. Under the law in force when the 1931 statute was introduced and enacted, proceedings for the removal of a workmen's compensation commissioner might be had before the governor. In addition to the mode of removal provided in the workmen's compensation act, there were two different general methods under our laws for the removal of public officers: (1) removal by the governor (Comp. Laws 1913, § 685, et seq.); (2) removal by judicial proceedings (Comp. Laws 1913, §§ 10,468, 10,482).

The removal proceeding here was instituted on the theory that the first method was applicable, namely, removal by the governor under the general statute authorizing the governor to remove from office certain specified officers. This statute (Comp. Laws 1913, § 685) reads as follows:

"The governor may remove from office any county commissioner, clerk of the district court, county judge, sheriff, coroner, county auditor, register of deeds, state's attorney, county treasurer, superintendent of schools, county commissioners, surveyor, public administrator, mayor, chief of police, deputy sheriff or other police officer, or any custodian of public moneys, except the state treasurer, whenever it appears to him by competent evidence and after a hearing as hereinafter provided that such officer has been guilty of misconduct, malfeasance, crime in office, or for habitual drunkenness or gross incompetency."

In the district court the relator contended that a workmen's compensation commissioner is not among the officers enumerated in section

685, supra, and that, consequently, a proceeding for his removal does not lie under that section. This contention was sustained by the district court. On appeal it is conceded that this ruling was correct, and after due consideration we agree with the trial court's ruling on this question.

Did the legislative assembly intend that a workmen's compensation commissioner might be removed only by judicial proceedings pursuant to (1) an accusation in writing made by a grand jury (Comp. Laws 1913, § 10,468); or (2) an accusation in writing, verified by the oath of some person and presented to the district court (Comp. Laws 1913, § 10,482)? We think not.

Section 10,468, Comp. Laws 1913, reads as follows:

"An accusation in writing against any district, county, township, city or municipal officer, or state officer not liable to impeachment, except representatives in Congress and members of the legislative assembly, for misconduct, malfeasance, crime or misdemeanor in office, or for habitual drunkenness or gross incompetency, may be presented by the grand jury to the district court of the county in or for which the officer accused is elected or appointed; provided, that when such proceedings are against a state officer not liable to impeachment, the accusation may be presented by the grand jury of the county or judicial subdivision in which such officer resides or in which he has his place of office for the transaction of his official business."

Section 10,482, Comp. Laws. 1913, reads thus:

"When an accusation in writing and verified by the oath of any person is presented to the district court, alleging that an officer within the jurisdiction of the court has been guilty of charging and collecting illegal fees for services rendered or to be rendered in his office, or has refused or neglected to perform the official duties pertaining to his office, or has rendered himself incompetent to perform his said duties by reason of habitual drunkenness or other cause, the judge of the court to whom it is delivered must forthwith cause it to be transmitted to the state's attorney of the county, . . . and the state's attorney of the county . . . must cause a copy of said accusation to be served upon the accused and, by written notice, require him to appear

before the court at a time specified, . . . and answer said accusation. . . ."

If the legislative assembly had in mind the mode of removal prescribed by § 10,468, supra, and intended that this mode alone should apply to the removal of a workmen's compensation commissioner, then the provision in chapter 314, Laws 1931, to the effect that "any or all of the commissioners may be removed for cause" was wholly unnecessary, for §§ 10,468 and 10,482, supra, enumerate the officers to which they apply. If a workmen's compensation commissioner is one of the officers enumerated in the sections, then their provisions apply wholly without reference to what is said about the removal of a workmen's compensation commissioner in chapter 314, Laws 1931. If, on the other hand, a workmen's compensation commissioner is not an officer enumerated in §§ 10,468 or 10,482, supra, then the provision in chapter 314, Laws 1931, clearly would not render a workmen's compensation commissioner subject to removal under the provisions of § 10,468 or § 10,482, supra. In short, in any view of the case there is no valid reason for assuming that when the lawmakers said in chapter 314, Laws 1931, that "any or all of the (workmen's compensation) commissioners may be removed for cause" they had in mind and intended that such removal must be had under § 10,468 or § 10,482, supra.

There are many reasons other than those stated above which render it highly improbable that the lawmakers had in mind removal proceedings under §§ 10,468 and 10,482, supra. The reasons that originally existed for the mode of removal prescribed by § 10,468, supra, have since largely ceased to exist. At the time this section was enacted and as a part of the same Code it was provided that "all public offenses triable in the district courts must be prosecuted by indictment." Section 161, Code of Criminal Procedure, Dakota Territory 1877. The North Dakota Constitution authorized the prosecution of all criminal offenses by information. North Dakota Const. § 8. The first legislative assembly to convene in North Dakota enacted a law "to provide for the prosecution and trial of crimes and offenses on information and to dispense with the calling of grand jurors, except by order of the district court judges." Laws 1890, chap. 71. This statute authorized prosecution for all criminal offenses to be had upon information. It con-

tained an emergency clause declaring it to be necessary that the statute be put into immediate effect in order to save the expense to the several counties that would arise (incident to impanelling a grand jury) if the act did not go into effect until July 1st following. In short, the first legislative assembly deemed the abolition of the grand jury system (except in the circumstances prescribed in the act) to be a matter of such importance as to require emergency legislation. It is a matter of common knowledge that grand juries are seldom called in any county in North Dakota. If a workmen's compensation commissioner is to be removed by a proceeding had under § 10,468, supra, then it would be necessary to have a grand jury impanelled for the purpose of making investigation and to determine whether the facts warranted the presentation of an accusation, and if an accusation is presented by the grand jury, the trial thereof must be had to a jury. If a removal proceeding is had under § 10,482, supra, the charges must be tried to a jury upon the request of the accused. In either case the cost of the trial of the removal proceeding must be borne by the county in which the accusation is presented. We are all agreed that when the lawmakers provided that a workmen's compensation commissioner might be removed for cause they did not have in mind and did not intend that the removal proceeding which they thus specifically authorized in chapter 314, Laws 1931, should be one by judicial proceedings under § 10,468, or § 10,482, supra. On the contrary, we are all agreed that they intended to authorize an administrative proceeding wholly distinct from the quasi-criminal proceedings authorized by §§ 10,468 and 10,482, supra. The lawmakers knew that it was an established policy in the state that workmen's compensation commissioners were appointed by the governor and removable by him for cause. In the 1931 enactment they specifically provided that all workmen's compensation commissioners should be appointed by the governor. In the same section they, also, provided that any or all of the commissioners so appointed might be removed for cause. It is true the governor does not have an inherent power of removal. If the act had merely provided that the governor should appoint a workmen's compensation commissioner and had remained silent as to removal, a situation quite different from that involved here would have been presented. But here the lawmakers, after providing for a workmen's compensation bureau

consisting wholly of members appointed by the governor alone, said that any or all of such commissioners might be removed for cause. They did not restrict the reasons for removal to certain specific enumerated grounds (as do §§ 10,468 and 10,482, Comp. Laws 1913); but used the general term "cause," which of course signified an intention that a workmen's compensation commissioner may be removed for any legal cause. Obviously the lawmakers intended that this provision should be effective and that when legal cause arose the removal which they had authorized should be accomplished. If, as appellant claims, the lawmakers intended to amend the then existing laws of North Dakota so as to say "the governor shall no longer have authority to remove a workmen's compensation commissioner," then it was not only their intention to reverse the established governmental policy but also to leave in operation only rather ineffective methods of removal. As has been pointed out, the section in question was re-written. The membership of the compensation bureau was changed. The chairmanship was changed but the appointive power was retained where it always had been,—in the governor,—and the legislative declaration that the workmen's compensation commissioners should be removable for cause was retained. Under the law existing when the 1931 law was enacted the power of removal was vested in the governor. In our opinion the lawmakers did not intend to change the method of removal. The presumption is that they did not intend to do so, and the changes made in the statute should not be so regarded unless a clear intent to that effect is manifested. State ex rel. Kositzky v. Prater, 48 N. D. 1240–1248, 189 N. W. 334. In our opinion, the lawmakers, by omitting the words "by the governor," did not manifest an intention to change the established governmental policy, and to establish in place thereof a cumbersome, expensive and ineffective method of removal. It is, we think, more reasonable to assume that they omitted these words because they thought them unnecessary and believed that by declaring that a workmen's compensation commissioner might be removed for cause they left in effect the right of removal where it always had been under the workmen's compensation act. We are agreed therefore that chapter 314, Laws 1931, does not deprive the governor of power to remove a workmen's compensation commissioner for cause.

It is next contended that inasmuch as the removal proceeding here

was instituted on the theory that a workmen's compensation commissioner is removable under § 685 Comp. Laws 1913, that the district court was in error in holding that the governor has power to proceed with a consideration and hearing of the charges. In our opinion this contention is without merit. The workmen's compensation act is silent as to the manner in which charges against a workmen's compensation commissioner shall be prepared. The act, however, implies the necessity for formal charges, notice of hearing and opportunity to be heard. Certainly there is no prohibition in the statute against having the charges reduced to writing and signed by the chief law officer of the state.

It is also argued that in any event the governor is without power to appoint a referee to hear the evidence in a proceeding for the removal of a workmen's compensation commissioner and that the charges in such proceeding must be heard by the governor in person. Obviously this question is not involved on this appeal. In this case the application for the writ of certiorari was made before any hearing had been had and before any evidence had been taken and the trial court made no ruling on the question whether the governor might appoint a referee to take and report the evidence. The trial court merely held that the governor had power to remove a workmen's compensation commissioner where the facts warranted such removal and after proceedings conformable to law. We are fully in accord with the conclusion reached by the district court on this question. It follows therefore that that part of the order challenged by the appellant on this appeal must be affirmed. It is so ordered.

MOELLRING, NUESSLE, BURKE and BURR, JJ., concur.