**BRUNSWICK CORPORATION, Plaintiff and Respondent,**

v.

**W. C. HAERTER, Defendant and Appellant.**

Civ. No. 8626.

Supreme Court of North Dakota.

Jan. 20, 1971.

854

M. W. Duffy, Cooperstown, for defendant and appellant.

Tenneson, Serkland, Lundberg & Erickson, Fargo, for plaintiff and respondent.

TEIGEN, Judge.

This case comes to us on appeal by the defendant Haerter with a demand for a trial de novo from the judgment of the district court. The district court, sitting without a jury, awarded a judgment in favor of the plaintiff Brunswick Corporation (hereinafter referred to as Brunswick) against the defendant W. C. Haerter (hereinafter referred to as Haerter) in an action for foreclosure on personal property covered by two installment contracts.

On September 9, 1959, Brunswick and Haerter entered into a retail installment contract for the purchase of six automatic pinsetters. Subsequently, extension agreements were entered into by the parties on September 19, 1963, and July 27, 1966. On October 20, 1959, the parties entered into a retail installment contract covering six bowling lanes, with allied equipment. On April 10, 1962, and September 19, 1963, the parties entered into extension agreements as to this contract also. The bowling lanes, with automatic pinsetters, were installed in the plaintiff's building where he operated a bowling alley.

Both retail installment contracts contained a number of provisions, among which were the provisions that the buyer (Haerter) would pay any tax levied upon the property described in the contracts and that the balance under each contract became immediately due upon the buyer's default. Haerter failed to pay personal property taxes levied on this equipment for the years 1960–1964, and 1966. In addition to this default, Haerter also defaulted in his payments due under the contracts. The last payment received by Brunswick on the pinsetter contract was on May 9, 1967, and the last payment received on the bowling lane contract was on November 29, 1966. Therefore, Haerter was in default on both contracts. In addition, Brunswick paid the personal property taxes, interest and penalties.

In May 1968 Brunswick brought this action in the district court to foreclose both retail installment contracts and in September 1968 amended its complaint to recover the personal property taxes paid on the equipment. Upon application of Brunswick the district court ordered the sheriff to seize, under a warrant of seizure, the equipment covered by both contracts. On May 1, 1968, the sheriff served the warrant of seizure and seized the equipment. In October 1968 Haerter counterclaimed for damages as the result of the seizure of the bowling equipment, claiming conversion by unlawful seizure.

The district court dismissed Haerter's counterclaim and awarded judgment to Brunswick for the balance due on both contracts. The court ordered that the equipment covered by the contracts be sold and that the net proceeds be used to pay the balance due Brunswick on both contracts, and that if such net proceeds were not sufficient to cover the judgment, Brunswick would have a general execution against Haerter for the deficiency. The court specifically held against Brunswick on its claim for the personal property taxes it had paid on the equipment.

Although Haerter lists seventeen specifications of error on this appeal, there are only three issues raised. The issues are: was Brunswick the proper party in interest; was the warrant of seizure valid and properly executed; and did Brunswick convert Haerter's bowling equipment? In addition, Brunswick raises the issue of whether the judgment should be modified to include the personal property taxes it paid.

The retail installment contract covering the six automatic pinsetters was between Haerter and Brunswick Automatic Pinsetter Corporation, and the retail installment contract covering the six bowling lanes, and allied equipment, was between Haerter and Brunswick-Balke-Collender Company. In its complaint Brunswick alleged that it was the successor in interest to both Brunswick Automatic Pinsetter Corporation and Brunswick-Balke-Collender Company. Both corporations were Delaware corporations. Haerter denied this allegation. The district court held that the evidence, by a fair preponderance, established that Brunswick was the successor in interest to Brunswick-Balke-Collender Company and Brunswick Automatic Pinsetter Corporation by way of merger and that such merger was common knowledge to the financial world so that the court, on its own knwledge, took judicial notice thereof.

As this case is here for a trial de novo we must find the facts anew. A reading of the district court trial transcript reveals no direct evidence that Brunswick was in fact the successor in interest to Brunswick-Balke-Collender Company and Brunswick Automatic Pinsetter Corporation. The plaintiff has alleged on this appeal that certain evidence was inadvertently excluded at the trial. A review of the transcript confirms this allegation. We found the excluded evidence material to a decision on appeal de novo; therefore, we issued a mandate as provided for in Section 28–27–32, N.D.C.C., directed to the trial court to take such evidence without

delay and to certify and return it to this court. In compliance with this mandate additional evidence was taken by the trial court and certified to this court. This evidence was in the form of exhibits, consisting of certificates from the secretary of state of the state of Delaware and properly executed certifications from officials of Brunswick. These exhibits clearly establish that Brunswick is the successor in interest to Brunswick-Balke-Collender Company and Brunswick Automatic Pinsetter Corporation. Accordingly, Brunswick is the proper party in interest in this action.

Haerter alleges that the warrant of seizure was not valid and was not properly executed in that the undertaking was not sufficient in amount and the verification of the notary public stated that the undertaking was signed by "Brunswick Corporation," although it was actually signed by Edgar Vannerman, Jr., an assistant secretary of Brunswick.

As to the undertaking, Section 32-20-04, N.D.C.C., provides that before issuing a warrant of seizure of property in any action of foreclosure on personal property a written undertaking on the part of the plaintiff, with sufficient surety, must be given which at least equals the amount claimed in the complaint. The amount of the undertaking here was $21,000, while the amounts claimed in the complaint were $18,200 and $1,499, plus delinquency charges and interest. An amended complaint for the personal property taxes paid by Brunswick in the amount of $4,138.88 was made after the undertaking had been given and the property had been seized by the sheriff under the warrant of seizure.

■ The undertaking on the original complaint was sufficient as the amount of the undertaking was in excess of the amounts claimed in the original complaint and specified in the warrant. We have not previously interpreted Section 32-20-04, N.D.C.C. Section 6 of Chapter 32-20, N.D.C.C. (Foreclosure of Liens on Personal Property), provides that the provisions of the chapter on attachment (Chapter 32-08, N.D.C.C.) shall apply to proceedings to foreclose on personal property so far as the same may be applicable. As these two chapters are similar, the cases interpreting one chapter are applicable in interpreting the other. Section 32-08-06, N.D.C.C., on the undertaking required in an attachment proceeding, has been interpreted by this court in MacDonald v. Fitzgerald, 42 N.D. 133, 171 N.W. 879 (1919). In that case this court held that where the undertaking was sufficient under the original complaint, an amendment which merely increased the *ad damnum* without changing the cause of action did not invalidate the attachment. This reasoning is applicable here. Accordingly, in this present case the undertaking does not fail simply because of the amended complaint. The amended complaint for personal property taxes paid by Brunswick is under the same contract claim that gave rise to the original complaint as both contracts specifically provided that Haerter would pay all taxes on the property covered by the contracts or, if paid by Brunswick, they would become a lien against the property. The undertaking in the present case is sufficient for the amount as stated in the warrant of seizure. The amended complaint did not change the basis of the claim; it merely increased the amount of the *ad damnum*. The surety is not released from liability and the seizure was not invalidated.

■ Section 32-20-04, N.D.C.C., provides that the undertaking required before a warrant of seizure may be issued shall be written and shall have sufficient surety. The signature on the undertaking is by Edgar Vannerman, Jr., as assistant secretary of Brunswick. This signature was acknowledged by a notary public. The error pointed out in the body of the notary's certificate of acknowledgment is to the effect that "Brunswick Corporation" was typed where "Edgar Vannerman, Jr." ought to have been typed. Thus, in the body of the certificate of acknowledgment it appears that the corporation appeared before the

notary public rather than the assistant secretary of the corporation who actually had signed the undertaking on behalf of the corporation. We hold that this typographical error is not fatal to the validity of the undertaking as his official capacity is properly set forth and he signed the document as an agent of Brunswick. Haerter also argues that Vannerman's signature is without any effect as there is nothing in the record to show that, as an assistant secretary, he was authorized to execute the undertaking and that Brunswick cannot be bound except through acts of an authorized agent. In support of his allegation that proof of Vannerman's authority must exist in the record, Haerter cites Section 10–07–03, N.D.C.C., which establishes the presumption that the president and secretary, or the president and cashier, of a foreign or domestic corporation may execute or acknowledge certain instruments affecting real or personal property. Therefore, Haerter argues that there is no presumption that an assistant secretary of a corporation has authority to sign an instrument, but his authority must be shown. It is clear, however, from the record that even though Vannerman's authority to sign this document is not shown, Brunswick has ratified Vannerman's action, making it Brunswick's own, by accepting the benefit thereof as provided by Section 3–01–08, N.D.C. C. It is a well-established principle of the law of agency that where a person acts for another who accepts or retains the benefits of his efforts with knowledge of the material facts surrounding the transaction he is deemed to have ratified the acts of the agent and is bound thereby. 3 Am.Jur.2d Agency, Section 175. Brunswick has prosecuted its foreclosure action by obtaining a judgment which impressed upon the property a lien based upon which the property seized was sold at judicial sale. Furthermore, Brunswick does not deny its obligation as principal on the undertaking. Accordingly, we find the undertaking signed by Vannerman is valid.

■ The warrant of seizure being valid, it was the duty of the sheriff to seize the personal property in question. Haerter alleges that by this alleged seizure Brunswick has converted his personal property and, as such, Haerter is entitled to damages. Haerter premises this argument on the basis that the sheriff did not remove the equipment from his building. As the warrant of seizure was valid, the only question could be as to whether or not the actual seizure of the property by the sheriff was properly made.

■ Section 35–20–07, N.D.C.C., provides that an officer's special lien by virtue of attachment is dependent upon possession. The actual seizure made by the sheriff consisted of serving upon Haerter the warrant of seizure and the undertaking, the removal of a part from each pinsetter thereby making the bowling alley inoperative, and the filing of a notice of attachment in the office of the register of deeds. However, he left the property in Haerter's building in place where it had been installed and was being operated as a bowling alley. We find that these acts were sufficient to constitute a lawful and complete seizure of the property and a retaining of possession thereof by the sheriff in satisfaction of the requirements of the statute. 6 Am.Jur.2d Attachment and Garnishment, Section 504.

Haerter contends that the sheriff should have actually removed the bowling lane's automatic pinsetters and allied equipment from his building and that a failure to remove this property constituted a conversion of the equipment and that he should, therefore, be entitled to damages because he could not rent out or otherwise use the building space.

■ Ordinarily it is not necessary, in order to effect a valid seizure of property, that it be removed from the building in which it is located. 22 A.L.R.2d 1290, Section 10. Furthermore, under Section 32–08–10, N.D.C.C., which is applicable by Section 32–20–06, N.D.C.C., a levy upon personal property which, by reason of its bulk or other cause, cannot be removed im-

mediately may be accomplished by the sheriff's filing with the register of deeds a notice of the levy. The sheriff, in this instance, complied with the statute. Although the property upon which he levied, because of its bulk and installation in the building, could not be removed immediately, we, nevertheless, find that it was properly seized by the service of the warrant, the disabling of the property for use, and by filing of the notice. There was no conversion as the sheriff had acted within his authority under the law. Haerter could have arranged with the sheriff for the payment of a fee as keeper of the property while under levy. Such fees, however, would constitute costs in the action for which the sheriff is permitted to charge under Section 11–15–11, N.D.C.C. Neugebauer v. Anstrom, 68 N.D. 684, 283 N.W. 74 (1938). The costs on a foreclosure of a lien on personal property are the same as in the foreclosure of a chattel mortgage (Section 35–01–30, N.D.C.C.), and allowable out of the proceeds arising from the sale (Section 35–23–13, N.D.C.C.). Thus, the burden of the cost would fall upon Haerter. A conversion is a distinct act of dominion wrongfully exerted over another's property, inconsistent with his rights. It is a tort. This is not the situation here. Under the circumstances of this case, we find that the trial court did not err when it dismissed Haerter's counterclaim.

Brunswick, which is the respondent on this appeal taken by Haerter, argues that the judgment from which the appeal is taken should be modified to include the sum of $4,138.88 which Brunswick paid for delinquent personal property taxes, interest and penalty. The record establishes that the personal property taxes levied upon the equipment, while in the possession of Haerter, had not been paid and that there was due and owing on account thereof, plus the penalties and interest accrued, the sum of $4,138.88 which had been paid by Brunswick. The record[1] also establishes that this payment was necessary in order to avoid a sale of the equipment by the sheriff at tax sale. It also appears that

Brunswick, by its amended complaint, has prayed judgment for this amount in addition to the delinquencies under the contracts, and that the same be adjudged a lien under the terms of the installment contracts upon the equipment. The trial court in its memorandum decision and in its findings of fact, conclusions of law and order for judgment omits reference to this claim except that in its conclusions of law it excepts from the lien "any unpaid personal property taxes levied and assessed against the personal property hereinbefore described." Judgment was entered for the amount of the delinquencies on the respective contracts without including the personal property taxes paid by Brunswick.

Haerter, in resistance to the claim made by Brunswick on this appeal that it should be allowed the additional amount of $4,138.88, advises that Haerter, in taking this appeal, did not file a stay bond and that Brunswick elected to proceed to collect on the judgment while this appeal was pending. It was agreed by the parties in the arguments on this appeal that pursuant to the judgment entered, no stay thereof having been effected, a judicial sale was held and the equipment was sold by the sheriff with the net proceeds going to Brunswick. Haerter argues that because Brunswick had elected to receive and accept the benefits of the judgment it should now be precluded from seeking affirmative relief by asking that the judgment be modified to include this additional amount on the theory that the acceptance of the benefits estops Brunswick from prosecuting an appeal from the judgment. Haerter, in support of his argument, cites Re McKee, 69 N.D. 203, 285 N.W. 72 (1939), and quotes the following paragraph from the syllabus:

"A party who voluntarily acquiesces in or recognizes the validity and propriety of a judgment, order or decree against him, or takes a position inconsistent with the right to appeal therefrom, thereby impliedly waives his right to have such judgment, order or decree reviewed by an appellate court."

*Re McKee* is distinguishable from this case. In that case the appellant first appealed to the district court from a county court order dismissing a will contest. The district court reversed the county court and remanded the records to the county court. Thereafter, the county court entered an order and decree vacating its former order and further determined that the will in controversy was invalid and had not been proven to be the last will and testament of the deceased. The appellant then filed an application for a rehearing in the county court, which was denied. Thereafter, the appellant appealed from the order of the district court to the supreme court. This court held that because the appellant had recognized that the cause was properly pending in the county court when he applied to the county court for a rehearing, therefore he was estopped from appealing the prior decision of the district court to the supreme court. This case is not applicable here.

■ Although, as a general rule, a party who accepts a benefit of a judgment or an order cannot afterward prosecute an appeal to review the same; however, we held in State ex rel. Wenzel v. Langer, 64 N.D. 744, 256 N.W. 194 (1934), that this rule does not apply where the parts of the order or judgment are separate and independent and the receipt of a benefit from one part is not inconsistent with an appeal from another, or where the right to the benefit received is conceded by the opposite party.

■ It is also a general rule that a right of appellate review survives the acceptance of a benefit which is not placed in jeopardy by the review sought. Therefore, where the controversy raised by the appeal is confined to the additional amount claimed but not allowed, the appellant is not estopped from taking such appeal by acceptance of the amount allowed. 4 Am. Jur.2d Appeal and Error, Section 255.

In this case the sale of the property at the judicial sale did not produce sufficient money to pay the judgment entered by the trial court. There is a deficiency. Brunswick, under the judgment entered, is entitled to a deficiency judgment for the balance. Thus, the only question raised by Brunswick on this appeal is whether it should now be awarded a larger deficiency judgment against Haerter by the trial court. In other words, Brunswick argues that it should be entitled to relief in addition to that awarded by the trial court. Thus, its position on this appeal is not inconsistent with the judgment appealed from nor does this question place in jeopardy the amount allowed by the judgment from which the appeal is taken. We, therefore, find that the general rule of estoppel is not applicable.

There is another reason why this issue must be considered on this appeal. Haerter has demanded a trial de novo of the entire case under Section 28–27–32, N.D.C.C.

■ A party to an action aggrieved by a judgment rendered against him in an action tried to the court without a jury is not required to take an appeal under the statute providing for a trial anew in the supreme court. He may, if he desires, take an appeal and assign such errors as arise upon the judgment roll. If he desires to have the entire case reviewed, all of the evidence and proceedings must be embodied in the statement of the case and all that is required is that he specify in his statement that he desires a review of the entire case. If he desires to have the supreme court review certain questions of fact, he may have such questions reviewed and, in such case, only the evidence relating to such questions of fact are required to be embodied in the statement of the case. Haerter, in this case, demanded a trial de novo and asked that the entire case be reviewed and retried in this court on the appeal. Such an appeal brings into focus all of the issues in the case as all of the evidence is embodied in the statement of the case. The demand for trial de novo of the entire case, therefore, opens the entire judgment to review and it becomes the manifest duty of this court, upon an appeal of this character, to review the entire

**860**

record for the purpose of disposing of the case according to the provisions of the statute under which the appeal is taken, and this court must direct the entry of such judgment as is appropriate upon the whole record. Hoellinger v. Hoellinger, 38 N.D. 636, 166 N.W. 519 (1918); Henry v. Henry, 77 N.D. 845, 46 N.W.2d 701 (1951); Renner v. Murray, 136 N.W.2d 794 (N.D.1965).

Upon the record we are satisfied that Brunswick is entitled to have included in the judgment, in addition to the amount allowed by the trial court, the sum of $4,-138.88 which it paid out in satisfaction of personal property taxes, penalties and interest levied upon the equipment, and we direct that the judgment appealed from be modified accordingly.

For the reasons set forth above the judgment, as directed to be modified, is affirmed.

STRUTZ, C. J., and ERICKSTAD, PAULSON, and KNUDSON, JJ., concur.