Quentin **BANGEN** and Del Ray Bangen, Plaintiffs and Appellants,

v.

John **BARTELSON**, Sr., and Helen Bartelson, Defendants and Appellees.

Civil No. 950326.

Supreme Court of North Dakota.

Sept. 10, 1996.

Wade G. Enget (argued), of Schulte & Enget, Stanley, for plaintiffs and appellants.

Todd L. Cresap (argued), of Kenner Sturdevant Peterson Cresap, P.C., Minot, for defendant and appellee John Bartelson, Sr.

Harris P. Kenner (appearance), of Kenner Sturdevant Peterson Cresap, Minot, for defendant and appellee Helen Bartelson.

MARING, Justice.

Quentin and Del Ray Bangen appeal from a declaratory judgment holding that a cash lease of farm property the Bangens entered into with Helen Bartelson was "null and void from the outset" and that the Bangens have no claim for money or profits from the disputed property for the 1994 crop year. We reverse.

The focus of this case is on three quarter sections of land in Mountrail County which are owned by John Bartelson, Sr., and Helen Bartelson as joint tenants with rights of survivorship. The Bartelsons were married when they acquired the property in 1945. They were married for 35 years, but, at the time of trial, had been divorced for 17 years. They nevertheless continue to own the property as joint tenants.

The Bartelsons had two children during their marriage. A daughter, Janice Anderson, owns a quarter section of land close to her parents' property. A son, John Bartelson, Jr., is divorced from the sister of Sharon Bangen. Sharon is married to one of the plaintiffs, Quentin Bangen. Del Ray Bangen, the other plaintiff, is the son of Sharon and Quentin. Sharon and Quentin also have a daughter who is married to Lynn Billadeau.

John Jr., who also owned a home and farmland in the area, wanted to sell or lease his property and began negotiating with Lynn Billadeau and Quentin and Del Ray Bangen. They reached a tentative agreement to lease, with an option to purchase, John Jr.'s property. But, as part of the deal, John Jr. also agreed to secure to them the lease of the three quarter sections owned by John Sr. and Helen, and the one quarter section owned by Janice.

On March 31, 1992, Quentin and Del Ray entered into a three-year cash rent lease

agreement with Helen for the three quarter sections of land she owned in joint tenancy with John Sr. and also the quarter section of land owned solely by Janice. In the lease, Helen represented herself as the "owner" of the property. The lease called for total annual payments of approximately $12,000. However, neither John Sr. nor Janice signed the lease. The Bangens did not check with the register of deeds before entering into the lease.

Helen did not have any personal dealings with the Bangens regarding the lease. John Jr. took the lease to Helen for her signature. Helen explained she signed the lease for John Jr. because he wished to sell his property and she wanted to "help him out."

The Bangens farmed the land for the 1992 crop year, paid $12,000 in rent to Helen for that year, and filed the lease with the register of deeds in the fall of 1992. In October 1992, John Sr. notified Del Ray that he did not want the Bangens to continue farming the property. At the time, Del Ray was unaware that either John Sr. or Janice had any interest in the property, but later learned of their interests when he checked with the register of deeds. The parties then began negotiating a resolution for the 1993 crop year. The Bangens began applying anhydrous to the property and seeding it, and paid Helen $6,000 rent under the terms of the lease. The parties were able to reach only a partial resolution under which the Bangens were allowed to farm one quarter and John Sr. leased two quarters to others. Janice farmed her own quarter section. The Bangens placed all proceeds from the sale of grain from their quarter, and John Sr. placed all rental income from the remaining two quarters, into one escrow account. Also under the agreement, one-half of all escrow monies were distributed to John Sr.

In the fall of 1993, the Bangens commenced this declaratory judgment action against the Bartelsons under N.D.C.C. Chapter 32–23. Janice was not made a party to the action and her interest in the one quarter section of land purportedly leased to the Bangens by Helen was not an issue in the proceedings. John Sr. farmed the three quarter sections during the 1994 crop year.

The trial court found that the Bangens "were under the assumption that Helen Bartelson was the owner of all" of the property when they entered into the lease and that the lease was "void from the outset" because Helen lacked "ownership in a portion of the land leased." The court found no fraud on the part of the Bangens, but did find that Helen "was of legal age, competent, and held herself out as the owner of all four quarters of real estate" described in the lease. The trial court found John Sr. "verbally acquiesced" to the Bangens renting the three quarter sections during the 1992 crop year. The trial court ordered Helen to return to the Bangens $6,000 in rent they paid to her for the 1993 crop year and also awarded the Bangens the remaining 1993 funds held in escrow that had not previously been turned over to John Sr. The court ruled the Bangens had no claim to any crops or monies for the 1994 crop year. The Bangens appealed.

## I

The Bartelsons assert the Bangens' requested relief should not be granted because declaratory judgment is inappropriate under the circumstances and because the Bangens have accepted the benefits of the trial court's judgment. We reject both arguments.

## A

The Bartelsons argue declaratory relief is inappropriate because the violation of rights complained about has already occurred. We note that this action for declaratory judgment began while the three-year term of the lease, on its face, was still in effect. If the Bartelsons' argument is that declaratory relief is inappropriate because a breach of the lease had already occurred, or that Bangens should instead have sued for breach of the lease, Bartelsons are incorrect.

First, "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." N.D.R.Civ.P. 57. Moreover, N.D.C.C. § 32–23–02 specifically allows a court to determine any question of construction or validity arising under a contract, and N.D.C.C. § 32–23–03 allows a court to con-

strue a contract before or after a breach. See *Hoops v. Selid,* 379 N.W.2d 270, 272 (N.D.1985). Although, under N.D.C.C. § 32–23–06, a court may refuse to enter a declaratory judgment where the judgment would not terminate the uncertainty or controversy giving rise to the proceeding, we cannot say the trial court abused its discretion in declaring the rights of the parties under the lease in this case. We conclude a declaratory judgment action was an appropriate procedure to determine the validity of the lease.

### B

■ The Bangens paid Helen Bartelson $6,000, or one-half of the annual rent, at the beginning of 1993 for the 1993 crop year. As part of the resolution of this case, the trial court in the judgment ordered that Helen return the $6,000 in 1993 lease payments to the Bangens. It is undisputed that the Bangens have accepted Helen's return of the $6,000. The Bartelsons argue that N.D.C.C. § 9–03–25, and the principle that a party who accepts the benefits of a judgment waives the right to appeal, both bar the Bangens from challenging the judgment.

N.D.C.C. § 9–03–25 provides:

> "*Acceptance of benefit equivalent to consent.* A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it so far as the facts are known or ought to be known to the person accepting."

This statute is clearly inapplicable here. The Bangens did not voluntarily accept the $6,000 as a benefit of the lease agreement they had with Helen. They accepted the $6,000 as a benefit of the trial court's judgment, not the lease agreement.

■ As a general rule, a party who accepts substantial benefits under a judgment waives the right to appeal from the judgment. See, e.g., *Smith v. Smith,* 534 N.W.2d 6, 8 (N.D.1995). But not any acceptance of a benefit of the judgment precludes a party from appealing. In *Brunswick Corporation v. Haerter,* 182 N.W.2d 852, 859 (N.D.1971), this court explained:

> "Although, as a general rule, a party who accepts a benefit of a judgment or an order cannot afterward prosecute an appeal to review the same; however, we held in *State ex rel. Wenzel v. Langer,* 64 N.D. 744, 256 N.W. 194 (1934), that this rule does not apply where the parts of the order or judgment are separate and independent and the receipt of a benefit from one part is not inconsistent with an appeal from another, or where the right to the benefit received is conceded by the opposite party.
>
> "It is also a general rule that a right of appellate review survives the acceptance of a benefit which is not placed in jeopardy by the review sought. Therefore, where the controversy raised by the appeal is confined to the additional amount claimed but not allowed, the appellant is not estopped from taking such appeal by acceptance of the amount allowed. 4 Am.Jur.2d Appeal and Error, Section 255."

Because the appellant in *Haerter* argued it was entitled to relief in addition to that awarded by the trial court, we declined to dismiss the appeal, reasoning the appellant's "position on this appeal is not inconsistent with the judgment appealed from nor does this question place in jeopardy the amount allowed by the judgment from which the appeal is taken." *Id.*

In a similar vein, this court has declined to dismiss an appeal where the appellant's right to the benefit was not disputed by the appellee's filing of a cross-appeal to contest the benefit. See, e.g., *Spooner v. Spooner,* 471 N.W.2d 487, 489 (N.D.1991). As we explained in *Sanford v. Sanford,* 295 N.W.2d 139, 142–143 (N.D.1980):

> "Acceptance of part of the cash award in the instant case, denominated as a property settlement, is not inconsistent with Glenda's claim in her appeal on the merits that the award should have been larger. Her right to receive the amount provided in the divorce decree is apparently uncontroverted as Reed has not cross-appealed nor questioned in oral argument or in his brief on appeal, Glenda's right to that amount."

■ In this case, the Bartelsons have not cross-appealed or questioned in oral argument or in their brief on appeal the Bangens'

right to the $6,000 payment. Rather, the parties concede the issue of the validity of the lease is only pertinent for purposes of the 1994 crop year. In effect, the Bangens are arguing they are entitled to an additional benefit claimed, the ability to rent the property for 1994 under the terms of the lease, but which was not allowed by the trial court. We conclude that the Bangens are not precluded from appealing because they accepted the $6,000 from Helen.

## II

The trial court ruled the lease was "void from the outset" because Helen lacked "ownership in a portion of the land leased." The Bartelsons assert that the trial court was correct because the contracting parties were laboring under a mutual mistake of fact that was sufficient to void the lease. The Bangens assert that the trial court was incorrect because Helen, as a joint tenant, had the right to lease her undivided one-half interest to them in the three quarter sections of land she held in joint tenancy with John Sr.

### A

■ The Bartelsons argue the mutual mistake of fact in this case was the Bangens' belief that Helen owned all of the property. We reject the Bartelsons' argument that this constitutes a mutual mistake of fact.

The Bangens testified, and the trial court found, that they were "under the assumption" that Helen owned all of the property. The trial court also found that, when she executed the lease, Helen was "of legal age, competent, and held herself out as the owner of all four quarters" of land. Helen testified that she read the lease before signing it, but that she knows the property she has an interest in by the names of the original owners rather than by its legal description. Although the trial court further found Helen did not commit fraud, Helen testified at trial that when she signed the lease she did not intend to represent the ownership interests of John Sr. or Janice.

Whether she did so or not, Helen is charged with having read the lease for purposes of a mistake of fact analysis. *See Rink v. NPN, Inc.*, 419 N.W.2d 194, 195 (N.D.

1988). Moreover, considering Helen's testimony in conjunction with the trial court's finding of Helen's competence suggests that Helen knew she did not own all of the property covered by the lease when she signed it. Helen's knowledge she did not own all of the property covered by the lease and the Bangens' belief she did does not amount to a "mutual" mistake of fact. The Bangens' mistake was unilateral.

Under N.D.C.C. § 9–03–13, a mistake of fact cannot be predicated on a mistake "caused by the neglect of a legal duty on the part of the person making the mistake...." *See Security State Bank of Wishek v. State*, 181 N.W.2d 225, 233 (N.D.1970) (Bank could not claim it was mistaken in type of securities it purchased because it neglected legal duty to ascertain the type of securities offered before purchasing them). The Bangens did not check the office of the register of deeds, where they could have determined the true state of the title to the land in question, before entering into the lease with Helen. Under N.D.C.C. § 47–19–19, "[t]he record of any instrument shall be notice of the contents of the instrument, as it appears of record, as to all persons." Thus, we have long held the recording of deeds, mortgages and instruments affecting title to real property is constructive notice to all purchasers and encumbrancers subsequent to the recording. *See, e.g., First Nat'l Bank of Dickinson v. Big Bend Land Co.*, 38 N.D. 33, 164 N.W. 322 (1917). The Bangens were therefore charged with constructive knowledge of who owned the land described in the lease. We conclude that the Bangens' failure to ascertain the true state of the title to the property was the basis for their alleged mistake of fact, and because this was caused by neglect of a legal duty, the mistake of fact cannot void the lease agreement with Helen.

### B

■ In *American Standard Life and Acc. v. Speros*, 494 N.W.2d 599, 606 (N.D.1993), we described a joint tenant's interest in the joint estate as his or her " 'sole and separate property' " which he or she could pledge, encumber, lease or sell at pleasure:

"We have held that each joint tenant has the right of enjoyment to the extent of his or her interest. *In re Estate of Paulson*, 219 N.W.2d 132 (N.D.1974). Although a joint tenant may not convey or otherwise encumber another joint tenant's interest in property without the authorization or consent of the cotenant, one may deal with strangers as freely as owners of property held individually, and may convey or otherwise encumber one's own interest in the property without the consent of the other joint tenant. *Olson v. Fraase*, 421 N.W.2d 820 (N.D.1988). It follows that during the continuance of the joint tenancy, each joint tenant may have his or her fractional interest taken for the satisfaction of their individual debts. *Schlichenmayer v. Luithle*, 221 N.W.2d 77 (N.D.1974)."

*See also Wachter Development, L.L.C. v. Gomke*, 544 N.W.2d 127, 130 (N.D.1996) (every signer of deed conveys whatever interest that signer has unless each signer intends the other grantors to sign).

Helen had the right to lease her undivided one-half interest in the property to the Bangens without the consent of John Sr. The trial court erred in ruling the lease was "void from the outset."

## C

■ Generally, when one joint tenant leases her own interest in the common property to another without the consent of the other joint tenant, the lessee succeeds to the rights of the lessor, and is entitled to enjoy the possession of the property with the other joint tenant just as fully as the lessor would but for the lease. *See, e.g.*, Annot., *Effect of lease given by part only of cotenants*, 49 A.L.R.2d 797 (1956); *Swartzbaugh v. Sampson*, 11 Cal.App.2d 451, 54 P.2d 73 (1936). During the period of the lease, the lessee essentially occupies the position of cotenant with the other owner, and the nonjoining cotenant may not demand exclusive possession as against the lessee, but may only demand to be let into co-possession. Annot., 49 A.L.R.2d 797, at § 6; *Davis v. Shawler*, 214 Kan. 501, 520 P.2d 1270, 1276 (1974); *Satterlee v. Umenthum*, 47 S.D. 372, 198 N.W. 823 (1924); *Carr v. Deking*, 52 Wash.

App. 880, 765 P.2d 40, 43 (1988). Conversely, the lessee may not demand exclusive possession as against the nonjoining cotenant, and has no right to deprive the other owner of a concurrent and equal use of the premises. Annot., 49 A.L.R.2d 797, at § 7; *Nelson v. Wentworth*, 244 Mass. 457, 138 N.E. 917 (1923). Thus, the Bangens' argument that, under N.D.C.C. § 47–16–08, Helen had a duty to secure to them the quiet possession of the three quarter sections of property during the term of the lease is without merit. Helen, as a joint tenant, could not demand exclusive possession as against John Sr.; she could only demand to be let into co-possession as a joint tenant with an undivided one-half interest in the property. N.D.C.C. § 47–16–08 does not obligate Helen to secure to the Bangens more rights than she herself had in the property.

In *Speros*, 494 N.W.2d at 606–607, we held that a lease made without the other joint tenant's consent or authority is deemed valid and for the benefit of both joint tenants, and if the nonconsenting joint tenant does not ratify the lease, the leasing joint tenant is liable to account to the other joint tenant for receiving more than the proper portion of the rents and profits during the lease period. We further held that the liability for rents and profits on a joint tenancy is a personal charge against the joint tenant who holds the rents and profits, and one is not entitled to a lien on the land to secure the sums adjudged to be due.

Therefore, we conclude that the Bangens, having succeeded to Helen's interest in the property, are entitled to an accounting for their fair share of the rents and profits from the three quarter sections of land for the 1994 crop year.

## III

We conclude that the lease between the Bangens and Helen Bartelson was valid and enforceable as to Helen's undivided one-half interest in the three quarter sections of joint tenancy property. Because the Bangens succeeded to Helen's rights in the three quarter sections, we also conclude that they are entitled to their fair share of the rents or profits for the 1994 crop year. *See* Annot., *Account-*

*ability of cotenants for rents and profits or use and occupation,* 51 A.L.R.2d 388 (1957); Annot., *Accountability of cotenants for rents and profits or use and occupation,* 27 A.L.R. 184 (1923); 2 H. Tiffany, The Law of Real Property § 450, at p. 265 (3d ed. 1939) ("If one tenant is actually ousted or excluded by his cotenant from possession of the whole or any part of the property, the former may recover from the latter to the extent of the value of the use of which he has been deprived, whether the latter does or does not receive rents or profits from others.") *Compare Parceluk v. Knudtson,* 139 N.W.2d 864, 873 (N.D.1966) ("As a general rule, a tenant in common who occupies more than his proportionate share of the common property and who has not agreed to pay therefor, and who has not ousted his cotenant, is not liable to such cotenant for rent or for use and occupancy. . . .").

The record in this case does not disclose what happened to the rents or profits, if any, from the 1994 crop year. John Sr., however, testified that he farmed the three quarter sections of land to the exclusion of the Bangens and did not receive cash rent from the property for the 1994 crop year. It is unclear from the record whether Helen received from John Sr. a share of the 1994 income from their joint tenancy property. We confine ourselves to the issues raised in this declaratory judgment action.

The trial court erred in ruling that the lease was invalid during 1994 because it was void from the outset and that the Bangens have no claim for money or profits from the disputed property for the 1994 crop year. Accordingly, the declaratory judgment is reversed.

VANDE WALLE, C.J., and NEUMANN, SANDSTROM, and MESCHKE, JJ., concur.