ROBINSON, ETC. ET AL. *v.* HALL

[No. 256, September Term, 1964.]

*Decided May 11, 1965.*

18

The cause was argued before PRESCOTT, C. J., and HORNEY, MARBURY, SYBERT and BARNES, JJ.

*Myles R. Eisenstein* for the appellants.

*Morton P. Fisher, Jr.,* with whom was *Jesse Slingluff* on the brief, for the appellee.

PRESCOTT, C. J., delivered the opinion of the Court.

This case arose when the 6 year old (at the time of the accident) pedestrian plaintiff-appellant instituted suit against the motorist defendant-appellee for damages for injuries resulting from a collision at an uncontrolled street intersection in Baltimore City. Questions of primary and contributory negligence were submitted to the jury, and, after an adverse jury verdict and the entry of judgment against him for costs, the plaintiff has appealed.

He contends that the trial judge erred: (1) in its instruction "concerning the degree of care required in an emergency"; and (2) in refusing to grant his Nos. 2 and 3 prayers.

The parties, commendably, have agreed upon many of the facts. The accident occurred at about 4:30 p.m. on a clear afternoon in September, 1961, at the uncontrolled intersection of Baker Street (42 feet wide, running east and west) and McKean Avenue (42 feet wide, running north and south). The streets at this location were level, and the sidewalk on the west side of McKean is 15 feet wide. No pedestrian lines were painted in the street. Cars were parked on the north and south sides of Baker west of McKean, and traffic in Baker Street was proceeding in a single line both east and west. Immediately prior

to the accident, the young plaintiff had been to a confectionary store, and at the time of the accident was crossing from the northwest corner to the southwest corner of the intersection. When the accident occurred, the defendant, accompanied by one Arthur Flax, was operating his automobile easterly along Baker.

Only two eyewitnesses to the accident testified. The appellee stated that he was proceeding easterly on Baker. When he reached Monroe, a street 170 feet immediately west of Mc-Kean, he stopped for a red light. The light changed and he proceeded toward McKean at a speed of 15 to 20 miles an hour. When he had nearly arrived at the intersection, a car, travelling westerly on Baker, passed him, and, as it did, the plaintiff ran from behind this car in front of his. The first time he saw the child, the appellant was less than a foot away. He immediately applied his brakes and stopped within a couple of feet, but his car came into contact with the boy. He got out and went to the child, who was lying about 1½ feet in front of his vehicle, which was about 15 feet north of the south curb of Baker and about 9 feet west of the west curb of McKean.

A Mrs. Frazier was produced by the appellee. She was driving her car westerly on Baker and had nearly arrived at Mc-Kean. She saw a car ahead of her traveling west on Baker as it passed appellee. She saw the appellant "dash" out of the store, and "without stopping or looking" run into the street. He ran behind the car that was proceeding west on Baker (at a time when appellee's vehicle was just 3 to 4 feet away) directly into the path of appellee's automobile.

I

Appellant attempts to make this contention a two-pronged challenge to a portion of the court's instructions. He states that the court failed to permit the jury to determine whether appellee was confronted with an emergency at the time of the accident, and, even if an emergency existed, the court should have instructed the jury that the emergency rule cannot be invoked by one whose negligence has created the emergency. There can be little doubt that if there be evidence in a case legally sufficient to support a finding that an emergency existed, the existence, *vel non*, of such emergency, generally, becomes a

question of fact for the jury. *Lehmann v. Johnson,* 218 Md. 343, and cases therein cited. And there also can be little doubt that one, who by his own wrong has brought about an emergency, cannot invoke the emergency rule. *Baker v. Shettle,* 194 Md. 666; *Warnke v. Essex,* 217 Md. 183; 1 *Blashfield, Cyc. of Automobile Law and Practice,* pp. 547, 552.

However, if we lay aside the possibility that the uncontradicted evidence disclosed that an emergency existed, we are unable to conclude that the questions were properly reserved, under Maryland Rule 554 d, for our consideration. Here is appellant's objection to that portion of the charge relating to the question of emergency: "Your Honor's instructions to the jury that this was an act of emergency. I do not feel that instruction is appropriate as there is *some* evidence in this case that the emergency was brought about by the *acts* of the defendant and under those circumstances that instruction *should not be given.*" (Emphasis added.) The objection did not state that defendant's "negligence" brought on the emergency, and, in fact, challenges the propriety of giving *any* instructions relative to an emergency.

It will be noted that there was no request that the court inform the jury that it should determine whether or not an emergency existed. Had this been done, the court could have then decided whether to include such an instruction in a supplemental charge, or that the uncontradicted evidence conclusively showed that an emergency did exist and he was going to rule, as a matter of law, to that effect. Such a course of conduct would have definitely reserved for our review the ruling of the trial court, either way it ruled. It, likewise, will be noted that the objection contains no request to instruct the jury that the emergency rule cannot be invoked by one whose negligence has created the emergency. Again, had this been done, the trial court then would have had the option to instruct the jury to that effect, or refuse to do so; and, again, this clearly would have reserved the propriety of its ruling for our determination. The objection, as we have quoted it above, does not, we think, preserve the questions for our review.

Maryland Rule 554 d is not frivolous or technical in nature, nor is it designed to protect unwary trial judges and entrap

trial counsel lacking alertness. It is a very practical, down-to-earth rule, which serves a useful and salutary purpose. When a trial court delivers its oral instructions to a jury, they, generally, cover quite a few questions of law, with varied ramifications. In giving such instructions, the courts, quite naturally, on occasions inadvertently misstate some principle of law or omit some instruction that should be given. The Rule affords trial counsel, who are familiar with the facts of their case and the law appertaining thereto, an opportunity to call to the attention of the court any such omission or misstatement, and, in turn, affords the court an opportunity to correct any such omission or misstatement. This, quite frequently, does away with the necessity of new trials, with the attendant expenditure of time and costs. Thus, the Rule serves a very practical and useful purpose.

## II

In the instant case, the trial court rejected all written prayers or instructions requested by the parties, and instructed the jury orally. This, he had a right to do, provided any properly requested instruction was "fairly covered by instructions actually given." Maryland Rule 554 b 1. Appellant here assigns as error the refusal to grant his written prayers Nos. 2 and 3. We do not think it would serve any useful purpose to set forth verbatim the prayers or the court's instructions which appertained thereto. It will suffice to say that, putting aside possible defects in the written prayers, we have carefully examined the prayers and the court's instructions, and, from such examination, we have concluded that all instructions properly requested in the prayers were "fairly covered" in the court's instructions.

*Judgment affirmed, with costs.*