WILFORD R. BRASWELL *v.* RONALD LEE BURRUS

[No. 85, September Term, 1971.]

*Decided December 2, 1971.*

The cause was argued before MORTON, ORTH and POW-ERS, JJ.

*Leonard Passano Baker, Jr.,* with whom was *Marvin Ellin* on the brief, for appellant and cross-appellee.

*David M. Buffington* and *James E. Gray,* with whom was *Alfred L. Brennan* on the brief, for appellee and cross-appellant.

POWERS, J., delivered the opinion of the Court.

When John Goff left the Reds Davis Bar on Eastern Boulevard in Baltimore County shortly after the 2:00

A.M. closing time on October 8, 1967, he found that his car, parked in front of the bar, would not start. He enlisted the help of several other men then leaving the bar. Among them was Wilford R. Braswell who, by reason of the chain of circumstances thus begun, is the appellant here.

Two other cars were brought up behind the Goff car, in succession, for the purpose of pushing it, but the bumpers did not "match". It was concluded to push the Goff car by using manpower, and with Mr. Goff at the wheel, four or five others arrayed themselves across the back. Appellant was on the right end of the line, at the right rear fender. They pushed the car onto the highway, and headed east, in the right lane. There was evidence that the car lights were on.

Eastern Boulevard in that area was described as a divided highway with a wide grass median strip. On the south side were two lanes provided for eastbound traffic, adjoined at the outer edge by a hard surface shoulder wide enough for a car to park or drive on. The area was rather heavily built up, but there were no street lights. The posted speed limit was 35 miles per hour.

While it was being pushed, Ronald Lee Burrus, appellee, driving east on Eastern Boulevard, hit the Goff car, as well as appellant and one or more of the other men. Braswell sued Burrus in the Circuit Court for Baltimore County. The case was tried before Judge Walter R. Haile and a jury, which returned a verdict for the defendant. Braswell appealed from the judgment entered upon that verdict. Burrus filed a cross appeal, but we need not reach the questions raised in it, and shall deal only with the original appeal.

All of the evidence in the case was produced on behalf of the appellant, except for appellee's testimony that his headlights were on. None of the men doing the pushing was aware of the approaching car until some of them heard the "screech of brakes". There was no evidence that any of them ever looked behind them after entering

the highway. The only details of the occurrence were those described by the appellee, when appellant called him as an adverse witness. His testimony was not contradicted on any significant point.

Appellee said he was on his way home, driving east in the left lane, at 35 miles per hour. He had stopped at a red light about a quarter of a mile back. Before he reached the Reds Davis Bar he saw a group of men standing in the road at a point beyond the bar. They were about 300 feet from him. They appeared to him to be in the right lane, and partly in the left lane. He did not see a car. He took his foot off the accelerator and slowed to about 25 miles per hour. He agreed that he could have brought his car to a stop, but said:

> "It was late at night and I could not see why I should be stopping at that late hour on the highway which I didn't know what was going on at the time and to avoid them, I decided to go to the right-hand lane shoulder, around it because I had plenty of room."

He further explained:

> "When one of the people from the group that was standing on the road run to the right-hand side, I slammed on my brakes and I started sliding and I knew I was sliding toward the people, at which time I seen the car and I slid into it, at which time I slid into the car and the group of people."

He said that at the time of impact his speed was roughly ten miles an hour.

Appellant recalled nothing that happened from the time the men started pushing the Goff car until some days later.

Reversal of the judgment below is sought because of erroneous and prejudicial instructions. Appellant says:

1. He enjoyed a status other than mere pedestrian when he and others were pushing a disabled vehicle in

the right lane of travel in the early hours of morning on a broad boulevard.

2. The court erred in instructing the jury on the emergency doctrine when no emergency existed, other than through the negligence of appellee.

3. The court erred in qualifying the last clear chance instruction by adding the sudden emergency rule, which was not applicable.

In the context of the motor vehicle laws, a pedestrian is a person on foot, as distinguished from one in or on a vehicle, on or near a public highway or other place where the motor vehicle laws apply. The duty of some pedestrians, such as police officers, maintenance workers, and perhaps others, whose work requires their presence on a highway, may be judged in the light of the special circumstances existing, but they are nonetheless pedestrians. In *Schutz, Jr. v. Breeback*, 228 Md. 179, 178 A. 2d 889, the Court of Appeals said at page 182:

> "It is generally recognized that workmen in the highway cannot be as alert as pedestrians or other travelers, and they are said to occupy a special status. The question whether such a worker has exercised reasonable care is ordinarily left to the jury."

We recognized this special status in *Clayborne v. Mueller*, 13 Md. App. 530, 284 A. 2d 24.

A motorcycle rider who dismounts and pushes his motorcycle on a public highway is a pedestrian. He is not relieved of the duty of keeping a careful lookout for cars after he gets off his motorcycle and starts to push it. *Domeski v. Atlantic Refining Co.*, 202 Md. 562, 567, 97 A. 2d 313.

Appellant's participation in moving a disabled vehicle from a place of safety to a place of danger, and in pushing the vehicle without looking back for approaching vehicles, is not a special circumstance ameliorating his duty as Judge Haile described it when he said:

"A pedestrian, under Maryland law, who is in a roadway is obligated to use the same degree of care as the operator of a motor vehicle. A pedestrian is charged with the duty of seeing the lights of an approaching vehicle and yielding the right of way to such vehicle, unless, of course, he is in a pedestrian crossing.

So, when a pedestrian knows of danger or, by the exercise of ordinary care should anticipate danger, it is negligent for him to leave a place of safety and voluntarily expose himself to danger."

In support of his contention that the judge erred in giving that instruction, appellant cites *Victor Lynn Lines, Inc. v. State, Use of Pursel,* 199 Md. 468, 87 A. 2d 165. In that case the use plaintiffs' decedent was killed while pushing a disabled car at night, with lights burning, in the slow lane of a dual highway. The car was hit by a truck overtaking from the rear. The Court of Appeals merely held that under all the circumstances of that case, the actions of the decedent did not constitute contributory negligence as a matter of law, and the issue was properly submitted to the jury.

The quoted instruction on appellant's duty as a pedestrian was at least as favorable to him as he was entitled to have it.

We consider the other two points together. Appellant requested a last clear chance instruction, but took exception contending that the judge erred when he qualified it by saying, "This rule of law is called the last clear chance doctrine. Obviously, it does not apply to a factual situation wherein the driver is confronted with a sudden emergency." A sudden emergency instruction was also given. If it was proper to give it, then the qualification of the last clear chance instruction was equally proper.

It is the application, not the definition, of the sudden emergency doctrine which causes its frequent consideration by the appellate courts. The Court of Appeals, deal-

ing with the principles of law involved, said in *Warnke v. Essex*, 217 Md. 183, 141 A. 2d 728, at pages 186-187:

"Generally, the operator of an automobile who suddenly finds himself in a position of peril is not required to exercise the same care as when he has ample time to reflect upon the course of action he should pursue. *Burhans v. Burhans*, 159 Md. 370, 150 A. 795 (1930). However, if the operator is not actually in a position of sudden peril, or, if the peril arises because of his own negligence, then the emergency rule is not applicable. 5 *Am. Jur., Automobiles*, § 171; 60 *C. J. S., Motor Vehicles*, § 257.

The relevant inquiry, then, is whether an ordinarily prudent person would have acted in the same manner as the defendant did in this case. The mere fact that a person finds himself in a predicament or emergency does not automatically relieve him of the obligation to use ordinary care. The amount of care might change, of course, but the degree or standard of *ordinary care* is always the same, *i. e.*, the care that would be used by an ordinarily prudent person under the same circumstances, the emergency itself always being considered and weighed as one of the circumstances. See 2 *Harper and James, Law of Torts* (1956), § 16.-11, and *Prosser, Torts* (1955), § 32.

Whether the operator of an automobile was confronted with an emergency, and whether he acted negligently under the circumstances, are generally questions for the jury. 10B *Blashfield, Automobile Law and Practice* (1957), § 6648."

We recently considered the question in *Armstrong v. Johnson Motor Lines*, 12 Md. App. 492, 280 A. 2d 24, and said, at page 501:

"Proof by a party that he acted as he did because he was confronted with an emergency, to

which he did not contribute, and which he could not have forseen by the exercise of reasonable care, becomes one of the circumstances surrounding the entire occurrence, and focuses the inquiry on the question of whether he exercised due care *under those circumstances.* He is to be judged, not by hindsight, but in the light of the alternatives available to him in that emergency, and the time available to him to recognize and evaluate those alternatives, and to make the choice of a reasonable, prudent person. Whether he was negligent in the action he took in the face of the emergency, or whether he used reasonable care *under the circumstances* is ordinarily a jury question. *Lehmann v. Johnson,* 218 Md. 343, 146 A. 2d 886."

Appellant does not quarrel here with the definition of sudden emergency as given by the judge, but contends that it was inapplicable, and should not have been given at all. He argues that appellee saw the men in the road when he was 300 feet from them, that he had the opportunity to reflect, and that he conceded that he could have stopped his car. Appellee's seeing the men in the road was neither an emergency, nor was it sudden. Thereafter he proceeded with what the jury must have concluded was reasonable care, including his decision to drive on the shoulder to pass the group. It was then that, according to his evidence, he was confronted with an emergency, not of his own making, but suddenly created by the act of one of the men in running across the shoulder a few feet in front of his car. We have no hesitation in saying, as did the Court of Appeals in *Warnke v. Essex, supra,* that these facts are not so decisive as to require or justify recognition of the emergency as a matter of law, but we do say that, as in *Warnke v. Essex, supra,* they created a jury question, upon which an appropriate instruction was required. Far from committing error in giving the instruction, the judge would have been in error to refuse it.

The instructions given by Judge Haile, taken as a whole, fairly stated the law applicable to the evidence in the case. *Casey v. Roman Catholic Archbishop,* 217 Md. 595, 143 A. 2d 627, *Robinson v. Hall,* 239 Md. 17, 209 A. 2d 917.

Had we found reversible error in the instructions, we should have been required to consider the contention of appellee in his cross appeal that his motion for a directed verdict should have been granted, for one or more of the several reasons which he assigned. We find no error in the instructions prejudicial to appellant, and we need not consider the cross appeal.[1]

*Judgment affirmed.*
*Appellant to pay costs.*

---

1. Appellee's cross appeal was unnecessary. He could have asserted the incorrectness of the court's adverse ruling on his motion for a directed verdict without taking a cross appeal. *Sears v. B. and O. Railroad,* 219 Md. 118, 122-123, 148 A. 2d 366, Maryland Rule 1087.