JOEL LEWIS KAPLAN *v.* WILLIAM S. BACH ET UX.

[No. 803, September Term, 1976.]

*Decided May 17, 1977.*

The cause was argued before MENCHINE, MOORE and LISS, JJ.

*Joseph S. Casula* for appellant.

*Richard J. Sincoff* for appellees.

MENCHINE, J., delivered the opinion of the Court.

William S. Bach and Barbara R. Bach (appellees) filed an action in the Circuit Court for Montgomery County against Joel Lewis Kaplan (appellant) and another.[1]

Service of process was had upon the appellant under the "long arm" statute[2] by registered mail[3] addressed to him at 7107 Colgate Drive, Alexandria, Virginia. Jurisdiction under the "long arm" statute was grounded upon allegations that appellant had committed a tortious act (conversion of personalty) within the State of Maryland.

When no answer had been filed within sixty days after completion of service as required by Maryland Rule 107 b, appellees filed a motion for judgment by default. Judgment by default was entered on January 23, 1976. On the same day the Clerk of Court notified the appellant of the entry of judgment as prescribed by Maryland Rule 611.

There was, in short, full compliance with all jurisdictional requisites as to the judgment by default.

On February 13, 1976, a hearing was had for assessment of damages following judgment by default. Maryland Rule 648.[4]

---

1. David Cohen was sued as a single defendant in count two of the declaration and jointly and severally with Kaplan in count three thereof. Cohen was never served with process and is not a party to this appeal.

2. C. J. Article § 6-103.

3. Maryland Rule 107.

4. Rule 648 in pertinent part reads as follows:
*"Inquisition — After Interlocutory or Default Judgment* ...Law

Where an interlocutory judgment or judgment by default has been entered, the court shall on motion of the plaintiff, make an order in the

154

After testimony in open court, judgments for $8,000.00 compensatory damages and $25,000.00 punitive damages were extended on the same date.

At that hearing, plaintiffs-appellees offered evidence that the defendant-appellant had occupied a condominium unit in Ocean City, Maryland, from April until June pursuant to a contract of sale with the appellees; but that the parties had agreed to rescind the contract, and the appellees were to refund the $300.00 deposit, provided that the unit was clean. On or about June 23, the appellees called appellant and told him that they were coming down to the unit that night and that they would refund the $300.00 deposit.

Their observations upon arrival were described in the following words:

"We went up to the unit and found it completely empty, with the carpets torn out in both the bathroom, the porch; the drapes, all the furniture, fixturing and everything, was taken from the apartment, with the exception of one large couch which was missing the pillows. Evidently they could not get it through the door.

\* \* \*

"I went to the manager and asked people at poolside. No one seemed to know anything about it. I called the police. When the police came they could not find anything either. I walked around the apartment and I found my carpet folded up from my porch on someone else's porch. The police knocked at the door and, sure enough, all my furniture and fixtures were in that particular apartment.

\* \* \*

"I found Mr. Joel Kaplan and another party had bought that particular unit in the condominium

---

nature of a writ of inquiry, . . . [whereby] the court where such judgment is, shall without the jury, inquire of the damages and costs sustained by the plaintiff in such action, and shall assess the damages and costs and order the judgment to be extended for the amount so found to be due, and interest."

and Mr. Kaplan had called his partner and advised him to move everything out of my apartment before I got down there.

\* \* \*

"I talked to their attorney on the phone who advised me all my goods would be returned to me by 12 o'clock the next day. I came back at 12 o'clock the next day and found they had left the apartment and all my goods were locked in and I could not get in. They had gone back to Virginia where they lived.

\* \* \*

"He told [me] he knew he had wrongly taken [my] furniture."

The appellant was described as follows:

"He is a real estate broker, promoter-type. . . . A young guy. Drives a Rolls Royce."

Bach testified that the furniture, fixtures, drapes and carpeting were never returned.

Proof was offered that the furniture and appurtenances had a value of about $3,000.00.

On February 23, 1976,[5] the appellant filed a motion to set aside the judgment by default.

On June 30, 1976, after hearing, the motion to set aside judgment by default was denied and the monetary extensions of that judgment were continued in force.

On July 29, 1976, appellant entered an appeal to this Court asking:

1. Was the defendant-appellant denied Due Process of law by the failure of the Clerk to give notice of the ex parte proof of damages?

---

5. February 22, 1976, the thirtieth day after entry of judgment by default, was a Sunday. Thus the judgment had not become enrolled so that the motion was within the discretionary power of the trial court under Rule 625 a. See Maryland Rule 8 a.

2. Did the trial court abuse its discretion in denying defendant-appellant's timely motion to set aside the judgment by default?

### Due Process

Appellant contends that he received no notice of the inquisition as to damages conducted subsequent to the entering of the judgment by default. Maryland Rule 648 requires no notice.

He maintains that the failure to give notice amounted to a denial of due process. The issue was not raised in the motion to set aside the default judgment nor presented to the trial court at the hearing on the motion. The issue, therefore, is not properly before this Court. Maryland Rule 1085. *But see Capobianco v. Gordon,* 19 Md. App. 662, 313 A. 2d 517 (1974).

In any case, we note that in the course of the hearing [6] upon the motion to strike the judgment, the trial judge made the following comment:

"(The Court) Here is a man who was served with process, and he was served with process well in advance of the time that the matter was heard in court. He was served — I forget the date — November 4 or whatever it was, and there is a certificate, there is a return receipt which is attached to Mr. Sincoff's affidavit of service. He was properly served. He had ample opportunity to come in this court, seek your advice, seek his own counsel's advice. He was in consultation, apparently, with Mr. Sincoff during this period. He

---

[6]. Appellant was not in attendance at the hearing upon the motion to strike. His absence produced the following colloquy between court and counsel for appellant:

"(The Court) Mr. Kaplan is here?

(Mr. Richin) I have him on telephone call. The only reason was he told me there had been so many communications between Mr. Sincoff and him I did not feel it was in his best interests to not have Mr. Sincoff and him in the same courtroom.

(The Court) You can't mean that?
(Mr. Richin) I am telling you what he told me."

acknowledged to Mr. Sincoff he knew about the existence of this proceeding, and he chose to do nothing about it.

"Now, what possible basis is there for now saying, 'Oh, I am sorry, I should have done something about it. Let me back in.'?"

Due process, as it relates to judicial proceedings, requires notice and an opportunity to defend. *Matter of Easton*, 214 Md. 176, 188, 133 A. 2d 441, 448 (1957). It is satisfied not only by personal service but also when there is adherence to the Maryland Rules with respect to service of process. *J. Whitson Rogers, Inc. v. Hanley*, 21 Md. App. 383, 393, 319 A. 2d 833, 839 (1974).

The failure to answer and defend was a matter of the personal choice of the appellant — not a product of the failure of notice and opportunity to be heard. This record demonstrates no denial of due process.

### Abuse of Discretion

We think that the motion to strike the judgment by default has a dual aspect, namely: (a) as to the interlocutory judgment by default itself and (b) as to the extension of that judgment by default by the grant of compensatory damages in the amount of $8,000.00 and the grant of punitive damages in the amount of $25,000.00. We shall separately discuss the motion as applied to those dual aspects.

### (a)

### The Interlocutory Judgment by Default

It is quite firmly established that both the interlocutory judgment by default for want of plea (*Maggin v. Stevens*, 266 Md. 14, 291 A. 2d 440 (1972)) and the subsequent monetary judgment entered in extension thereof (*J. C. Penney Co. v. Harker*, 23 Md. App. 121, 326 A. 2d 228 (1974)) are within the reach of the revisory power of the trial court under Maryland Rule 625 a.

The motion to strike, having been filed within thirty days

of the order of dismissal, is governed by the following provision of Maryland Rule 625 a:

> "a. *Generally.*
>
> For a period of thirty days after the entry of a judgment, or thereafter pursuant to motion filed within such period, the court shall have revisory power and control over such judgment. . . ."

The discretionary power conferred upon the trial court by the quoted portion of Rule 625 a is broad and must be exercised liberally "lest technicality triumph over justice." *Eshelman Motors v. Scheftel,* 231 Md. 300, 301, 189 A. 2d 818, 818 (1963).

It is firmly established, however, that the broad discretionary power thus conferred, should be exercised only when the movant shows a reasonable indication that there is merit in his cause. *Clarke Baridon v. Union Co.,* 218 Md. 480, 483, 147 A. 2d 221, 222 (1958); *Brewer v. Mele,* 267 Md. 437, 441, 298 A. 2d 156, 159 (1972); *Industrial Developers v. Berg,* 269 Md. 250, 251-52, 305 A. 2d 121, 122 (1973).

Appellant raised no specific, substantial defense to the action other than a general contention that the action was "frivolous and without merit." He states that his failure to file an answer to the action was due to a lack of representation by counsel and his ignorance of the law. Appellant, however, has no one to blame but himself for his predicament since he should have sought counsel immediately upon receiving notice of the appellees' complaint. This excuse is governed by the ancient legal maxim: *"ignorantia legis neminem excusat."* Appellant also maintains that he was relying on appellees' counsel to keep him informed on the latest developments in the case and that the appellees failed to notify appellant that they would enter a default judgment against him. Such reliance is misplaced, since there is no obligation to advise an opponent of intent to obtain a judgment by default. Maryland Rule 306 (b). *Maggin v. Stevens, supra; Ventresca v. Weaver Brothers,* 266 Md. 398, 292 A. 2d 656 (1972). A party is under an obligation to keep abreast of all matters involved in a

case, and actual knowledge of subsequent proceedings is immaterial. *Pumphrey v. Grapes*, 215 Md. 573, 138 A. 2d 916 (1958).

We find that appellant failed to allege or show a reasonable indication of a meritorious defense as to liability in the action and hold that the trial court did not abuse its discretion in denying the motion to set aside the default judgment.

### (b)

### *The Extension of Monetary Judgments*

We think that a different decision must be reached by us with respect to the monetary judgments of $8,000.00 and $25,000.00. We think that the trial judge abused his discretion in declining to strike those judgments. While the appellant had shown no reasonable indication that he had a meritorious defense as to liability, he did present to the court below evidence tending to show that the monetary judgment for compensatory damages far exceeded in amount the appellees' pre-trial evaluation of the damages they had sustained.

Moreover, our examination of the record shows that an erroneous measure of damage was applied by the trial judge in the assessment of compensatory damages.

In *B & O RR Co. v. Carr*, 71 Md. 135, 17 A. 1052 (1889), it was said at 143 [1054]:

> "The rule by which damages are to be estimated is, as a general principle, a question of law to be decided by the Court; that is to say, the Court must decide, and instruct the jury, in respect to what elements, and within what limits, damages may be estimated in the particular action."

*See also Russell v. Stoops*, 106 Md. 138, 66 A. 698 (1907), wherein judgment was reversed because the trial judge "failed to instruct the jury as to *the true measure* of damages."

Similarly, the trial judge, in a non-jury case, must *apply the true measure* of damages when that issue is submitted to

him for determination. We think he failed to do so. In *Checkpoint v. Sweeney*, 250 Md. 251, 242 A. 2d 148 (1968), it was said at 253 [149]:

"This Court has held that in an action for conversion of personal property, the measure of damages is the fair market value of the property at the time of the conversion, with legal interest running to the date of the verdict."

We are mindful that there may be extraordinary circumstances when the loss to the litigant is greater than the value of the property at the time of conversion if it has been shown that such loss is not speculative or conjectural. *Weishaar v. Canestrale*, 241 Md. 676, 684-85, 217 A. 2d 525, 530-31 (1966). This extension of the rule generally applicable in conversion cases, however, is subject also to the restriction common to all tort actions, namely, that it must appear that such special damages have been affirmatively proved with reasonable certainty to have resulted as the natural, proximate and direct effect of the injury. *Empire Realty Co. v. Fleisher*, 269 Md. 278, 284, 305 A. 2d 144, 147 (1973).

The record in the subject case makes quite clear that the value of the personal property taken by the appellee did not exceed $3,000.00. It shows as well that the compensatory damages awarded included $1,000.00 for loss of rental of the condominium itself and $4,200.00 in lost equity stemming from a later foreclosure of a mortgage upon the realty. The evidence failed to demonstrate that either such loss was the "natural, proximate and direct effect" of the injury complained of. Allowance for the same in the assessment of damages was error in the absence of such a showing.

Under these circumstances we think that the refusal to strike the judgment for $8,000.00 was an abuse of discretion.

We make no determination in this appeal whether the essential nexus required for allowance of either or both of such claims can be shown on retrial.

In the light of the circumstance that we must reverse and remand the cause for reconsideration upon the question of compensatory damages, we consider it necessary

also to remand as to the question whether punitive damages should be awarded and if so, to fix the amount thereof.

We are aware that under Maryland law it is unnecessary to demonstrate a ratio between the judgment for compensatory damages and the judgment for exemplary damages. *D. C. Transit Systems, Inc. v. Brooks*, 264 Md. 578, 589-90, 287 A. 2d 251, 257 (1972). We believe, however, that when a cause of action is of such character that both compensatory and punitive damages may be assessed, the right to and assessment of both should be simultaneously considered.

It is plain that under proper circumstances there can be punitive damages in a suit for conversion, *Siegman v. Equitable Trust Co.*, 267 Md. 309, 314, 297 A. 2d 758, 761 (1972), as where the act of the defendant is accompanied by wilful disregard of the plaintiff's rights or other circumstances tending to aggravate the injury. *McClung-Logan v. Thomas*, 226 Md. 136, 148, 172 A. 2d 494, 500 (1961).

We think the evidence in the subject case relating to the conduct and actions of the appellant was of such nature as would permit the trier of fact to conclude that punitive damages should be awarded by reason of the existence of the legal equivalent of actual malice, *i.e.*, that such conduct and actions were "of an extraordinary nature characterized by a wanton or reckless disregard for the rights of others." *Wedeman v. City Chevrolet Co.*, 278 Md. 524, 532, 366 A. 2d 7, 13 (1976).

*Order denying motion to strike interlocutory judgment by default affirmed; order denying motion to strike monetary judgments reversed.*

*Case remanded for inquisition as to damages.*

*One-half of the costs to be paid by the appellant, one-half by the appellees.*