Darvin SMITH and Jackie Smith, individually and representing their infants, Andrew Smith and Bruce Smith, and Farmers Insurance Group, Plaintiffs-Appellees,

v.

**Peggy Margaret SIMPSON, Defendant-Appellant.**

**No. 79CA1120.**

Colorado Court of Appeals, Div. I.

April 29, 1982.

Rehearing Denied May 20, 1982.

Certiorari Denied July 6, 1982.

Solomon & Zimmerman, P. C., David Schwartz, Denver, for plaintiffs-appellees.

James M. O'Hara, Denver, for defendant-appellant.

SMITH, Judge.

Defendant, Peggy M. Simpson, appeals judgments entered in favor of each of the Smiths for injuries sustained when the Simpson car crashed into the Smith home. We affirm.

At about 1:00 a. m. on October 7, 1977, Simpson, who had been drinking at a party since about 3:30 the previous afternoon started home. At approximately 1:30 a. m. she lost control of her car, drove it off of the roadway, and through a wall of the Smiths' home. The car came to rest in one of the childrens' bedrooms. Rubble and debris blocked the door to the other child's room. While the Smiths' physical injuries were relatively minor, they were all psychologically traumatized by the event, and have sought professional psychological counseling as a result thereof.

The Smiths sued Simpson in tort. Prior to trial, Simpson moved for summary judgment of dismissal, contending plaintiffs' rights were governed by the Colorado Automobile Reparations Act (The No-Fault Act), § 10–4–701, *et seq.*, C.R.S.1973 and that the Smiths were not eligible, under § 10–4–714 of the Act to bring suit. The Act, if applicable, would preclude the Smiths from suing Simpson directly and would limit their recovery to actual out of pocket expenditures for bodily injury. The court found that the Smiths were not covered by the Act, and had not brought the action pursuant to it. It therefore denied the motion. Thereafter, upon Simpson's admission as to liability, the case proceeded to trial on the

issue of damages alone. The jury returned verdicts awarding both actual and exemplary damages to Mr. and Mrs. Smith and each of their two children as follows:

1. In favor of Plaintiffs Darvin Smith, Jackie Smith and Farmers Insurance Group on the property damage claim—$3,259.84 actual damages and $2,500 exemplary damages.

2. In favor of Plaintiff Darvin Smith— $720 actual damages and $5,000 exemplary damages.

3. In favor of Plaintiff Jackie Smith— $720 actual damages and $5,000 exemplary damages.

4. In favor of Plaintiff Andrew Smith— $4,320 actual damages and $10,000 exemplary damages.

5. In favor of Plaintiff Bruce Smith— $4,320 actual damages and $10,000 exemplary damages.

The verdicts total $13,339.84 in compensatory damages and $32,500 in exemplary, or punitive, damages.

## I.

Simpson first contends that plaintiffs' action was governed by the terms of the No-Fault Act, and that therefore the plaintiffs were required to meet the conditions contained in § 10–4–714, C.R.S.1973, prior to maintaining a tort action for personal injuries. We agree with the trial court ruling to the contrary.

Simpson argues that plaintiffs' claims are governed by the Act, by virtue of § 10–4–707(1)(c), C.R.S.1973, which reads as follows:

"The coverages [of this Act] ... shall be applicable to ... accidental bodily injury arising out of accidents occurring within this state sustained by any other person ... while a pedestrian if injured in an accident involving the described motor vehicle."

Since Simpson's car was clearly subject to the terms of the Act, the issue of first impression presented for our review, is whether, as Simpson asserts, the Smiths were pedestrians within the meaning of § 10–4–707(1)(c), C.R.S.1973, when injured by Simpson. We hold that they were not.

We recognize that the Act defines "pedestrian" as "any person not occupying or riding in or upon a motor vehicle or machine operated by a motor or engine." Section 10–4–703(9), C.R.S.1973. We cannot, however, accept Simpson's argument that this definition despite the words used was intended to be so broadly construed as to apply to *all* persons injured by a motor vehicle, regardless of the circumstances under which the injuries occur. Here, for example, the victims were asleep in their beds in the family home. When we consider the legislative history leading to passage of the Act, and examine the Act as a whole, as well as its stated purpose, we conclude that the wording used in the definition of pedestrian adopted is sufficiently ambiguous to permit us to attempt to ascertain legislative intent in interpreting the statute.

The common meaning of pedestrian is one who travels on foot. "In the context of motor vehicle laws, a pedestrian is a person on foot ... on or near a public highway or other place where motor vehicle laws apply." *Braswell v. Burrus*, 13 Md.App. 513, 284 A.2d 41 (1971). While we have not found any case directly on point, the following decisions decided under similar statutes are instructive. In *Pilotte v. Aetna*, —— Mass. ——, 427 N.E.2d 746 (1981) plaintiff's decedent was seated in an unregistered and uninsured vehicle stored on private property. The insured's vehicle left the roadway, went onto the private property, and struck the stored vehicle in which plaintiff's decedent was sitting. The court found plaintiff's decedent was not a pedestrian. In our view, the clear implication of the term at issue is that a pedestrian is normally one who is on or about a highway or street, or at least afoot, and voluntarily in the proximity of a motor vehicle. *See e.g., Hopkins v. Liberty Mutual*, 156 N.J.Super. 72, 383 A.2d 458 (1978); *Burns v. Dills*, 68 Wash.2d 377, 413 P.2d 370 (1966).

Our Act itself, when read as a whole, indicates an intention on the part of the

General Assembly, that its definition of pedestrian comport with this reasoning.

In its definition of "motor vehicles," § 10–4–703(7), C.R.S.1973, it has excluded from the Act, "[m]otorcycles, motor scooters, minibikes, snowmobiles, bicycles with motor or engine attached, or any vehicle designed primarily for use off the road or on rails." And, in § 10–4–705, C.R.S.1973, it has made coverage, under the Act, compulsory only to owners of vehicles who operate or permit the operation of motor vehicles on the *public highways* of this state. Thus, vehicles operating out of the normal traffic flow on highways, roads, or other places, are exempt, as are their owners, from the compulsion of the statute.

■ We, therefore, conclude that in using the term "pedestrian," the General Assembly intended the coverage of the Act to be limited to all persons, "not occupying or riding upon a motor vehicle," who might reasonably be expected to suffer injuries by the operation of motor vehicles, by virtue of their being on, about, or near, highways, roads, or other places where motor vehicles can be expected to be operated. It was not intended to apply to those classes of persons who are completely removed in location from the normal flow of traffic on the roads and highways of this state. To include persons secure in their homes, and asleep in their beds, as "pedestrians" under the Act simply does not comport with common sense.

■ Because we have concluded that plaintiffs were not "pedestrians" under the provisions of Colorado's No-Fault Act, the Act has no applicability to them. Thus, they are not required to meet the requirements of § 10–4–714, C.R.S.1973 as a condition of bringing their action.

## II.

■ Simpson also asserts that the trial court erred in permitting an investigating police officer, who did not witness the actual collision, to estimate the speed of Simpson's car at the time of impact. We disagree. A patrolman may estimate speed from the physical facts at the scene of an accident if it is shown that by virtue of "his experience, education, training, and knowledge of the facts, his opinion as to speed would be something more than a mere layman's guess." *Atencio v. Torres*, 153 Colo. 507, 385 P.2d 659 (1963). The sufficiency of the foundation upon which reception of this evidence is based is a matter resting in the trial court's discretion. *Starkey v. Bryan*, 166 Colo. 43, 441 P.2d 314 (1968). Here, there was abundant evidence of record to indicate that the officer was qualified to estimate the speed of Simpson's car at the time of impact. Thus, we find no abuse of discretion.

## III.

■ Finally, Simpson appeals the amount of exemplary damages awarded, contending they were excessive as a matter of law. Her argument is premised solely on the fact that the amounts awarded to the individual plaintiffs did not bear a reasonable relationship to the actual damages suffered by each. This argument is without merit. No fixed mathmatical formula exists to determine the reasonableness of exemplary damages. *Miller v. Carnation Co.*, 39 Colo.App. 1, 564 P.2d 127 (1977). The purpose of an award of exemplary damages is to deter and punish conduct which is undertaken with a reckless disregard of the rights of others. We conclude that the facts of this case justify the amounts of exemplary damages assessed.

Judgment affirmed.

COYTE and PIERCE, JJ., concur.