**Delphine SULSKY, Plaintiff and Appellant,**

v.

**Larry G. HOROB and Lois Jean Horob, Defendants and Appellees.**

**Civ. No. 10644.**

Supreme Court of North Dakota.

Oct. 30, 1984.

Georgia M. Pope, Jamestown, for plaintiff and appellant; argued by Georgia M. Pope, Jamestown.

Pringle & Herigstad, Minot, for defendants and appellees; argued by Donald Negaard, Minot.

ERICKSTAD, Chief Justice.

The plaintiff, Delphine Sulsky, appeals from a judgment entered by the district court, Williams County, dismissing her cause of action which sought to rescind, on the basis of fraud, undue influence and mistake, a contract for deed which obligated her to convey certain real property to the defendants, Larry and Lois Horob. We affirm.

Delphine and her first cousin, Larry, "grew up together" on farmsteads a mile and a quarter apart in Williams County. Delphine is the surviving daughter of Estin Sulsky, who died on January 3, 1984, at the age of 90. Estin, prior to his death, executed a warranty deed dated March 3, 1983, in which he transferred to Delphine, for and in consideration of one dollar and other good and valuable consideration, certain real property described in the deed. The described real property consisted of the Sulsky farm, which included approximately 700 acres of land. Delphine thereafter executed a contract for deed, also dated March 3, 1983, in which she agreed to transfer the same property to Larry and his wife, Lois. Delphine reserved a life estate in the farmhouse and an adjoining garden plot. She also reserved fifty percent of all oil, gas, coal, gravel and all other minerals in and under part of the land.

The Horobs agreed to pay Delphine, in consideration for the property, the sum of $87,858 to be paid in the following manner as prescribed by the contract for deed:

"$10,000.00 per year for 15 years. Said payments represent the principal and interest. Interest on this contract shall be at the rate of 9% per annum, simple interest. The annual payment being due on the 1st day of March, of each and every year of this contract."

Delphine received an initial payment of $10,000 under the contract for deed on March 3, 1983.

The warranty deed and the contract for deed were executed in the office of Timothy Ottmar, an attorney in Jamestown. Ottmar was contacted, in February, 1983, by Delphine because, as Delphine testified, "Larry wanted to buy the land." Larry testified that Estin had offered to sell him the farm for $150,000 and wanted the payments to go to Delphine. Delphine testified that Larry had talked to Estin about buying the land and that Estin had talked to her about it "under medication and things." She testified that Estin "didn't understand too much."

Delphine and Larry met with Ottmar on February 14, 1983. Viewing the evidence in the light most favorable to the verdict, it appears that Ottmar was initially told to prepare a contract for deed providing for a selling price of $150,000 to be paid in installments of $10,000 over fifteen years. The contract was ultimately prepared to provide for a selling price of $87,858 plus interest at nine percent per annum to produce $150,000 over fifteen years with installments of $10,000 per year. This was done because it was believed that the Internal Revenue Service would otherwise impute interest on the $150,000 at ten percent per annum.

On March 3, 1983, the deed was signed by Estin and the contract for deed was signed by Delphine as seller and by the Horobs as purchasers. These instruments were both prepared by Ottmar. Ottmar testified that he read and explained both instruments to all parties and that it was his opinion that they all understood them.

Delphine commenced this action to rescind the contract for deed by service of summons and complaint dated August 4, 1983. Delphine alleged in her complaint that she is blind, is able to conduct her daily affairs, but must rely on the advice of others in handling major transactions. She alleged that she entered into the contract for deed as the result of fraud, undue influence, and mistake in that she relied on statements made by the Horobs concerning the market value of the land, the going rate of interest, and the dollar amount per acre the Horobs were to pay under the contract. She further alleged that she discovered, sometime in April, 1983, that the price to be paid by the Horobs for the land was inadequate, that the interest rate specified was not the going rate of interest at the time the contract was made, and that the Horobs were not paying the amount per acre that they had claimed they were. She thereafter mailed a letter to the Horobs offering to restore to them everything of value which she had received under the contract for deed.

The Horobs alleged in their answer that Estin conveyed the real property to Delphine for the purpose of allowing Delphine to convey the same property by contract for deed to the Horobs, all in accordance with an agreement between the Horobs and the "true owner" of the real property, Estin; that Estin had, on numerous occasions, made verbal promises that the real property would be sold to the Horobs at a bargain price or devised to them upon his death; and that it was the consideration shown and assistance given to Estin and Delphine by the Horobs over a period of fifteen years that prompted any bargain purchase, and not fraud, undue influence, or mistake.

A trial was had before a jury which found for the Horobs. A judgment was entered from which Delphine appealed by filing a notice of appeal dated February 17, 1984.

### I.

The Horobs have filed a motion with this Court to dismiss the appeal on grounds Delphine has accepted substantial benefits consistent with the district court's judgment. The motion is based upon an affidavit submitted by Larry Horob wherein he asserts that on or about February 24, 1984, he, through his attorney Roland Suess and in accordance with the contract for deed, forwarded directly to Delphine (allegedly without the knowledge and consent of Delphine's attorney) a check made payable to her in the amount of $10,000. The check, marked "2nd pmt. on land," was sent by certified mail to Delphine's home address in Jamestown. Larry asserts that the proceeds of the check are now in the possession of Delphine and that she made no attempt to return the check or the proceeds. In their brief in support of the motion, the Horobs argue that Delphine, by accepting a benefit *under the contract for deed,* has waived her right to appeal from the judgment.

As a general rule, where a party, knowing the facts, voluntarily accepts substantial benefits accruing to him under a

judgment, such acceptance operates as a waiver of the right to appeal from the judgment. *Gajewski v. Bratcher,* 240 N.W.2d 871, 888 (N.D.1976); *Piper v. Piper,* 234 N.W.2d 621, 622 (N.D.1975); *Tyler v. Shea,* 4 N.D. 377, 61 N.W. 468, 469 (1894); *cf. Dakota Northwestern Bank National Association v. Schollmeyer,* 311 N.W.2d 164, 166 (N.D.1981) ["[A] party who voluntarily pays a judgment against him waives his right to appeal from the judgment."]. The general rule is subject to recognized exceptions. In *Piper v. Piper, supra,* we said:

"An acceptance of substantial benefits under a judgment does not waive the right to appeal from that judgment if (1) the benefits were fixed by consent, are undisputed, or could not be changed or reversed by the appeal [*see Brunswick Corporation v. Haerter,* 182 N.W.2d 852, 859 (N.D.1971); *Boyle v. Boyle,* 19 N.D. 522, 126 N.W. 229, 230 (1910); *Tyler v. Shea, supra* ]; (2) the acceptance of the benefit was conditional, involuntary, or unconscious [*see Nastrom v. Nastrom,* 276 N.W.2d 130, 131 (N.D. 1979); *Grant v. Grant,* 226 N.W.2d 358, 361 (N.D.1975) ]."[1]

Delphine argues that the judgment entered in this case, as set forth in part as follows, conferred no benefit upon her:

"IT IS ORDERED AND ADJUDGED that the Plaintiff take *nothing,* that the action is hereby dismissed on the merits, with prejudice, and that the Defendants recover of the Plaintiff their costs and disbursements ...." [Emphasis added.]

In *Tuttle v. Tuttle,* 19 N.D. 748, 124 N.W. 429, 430 (1909), this Court said:

"In *Tyler v. Shea, [supra],* it is held that the plaintiff cannot accept *what the judgment gives him,* and then by appeal pursue a course which may overthrow the right of which he has availed himself, and it seems to make the test this, namely: That if a reversal of the judgment and a new trial may result in a decision showing that the plaintiff was not entitled to *what the former judgment gave him,* then the appeal should be dismissed on showing that a benefit has been accepted. In *Williams v. Williams,* 6 N.D. 269, 69 N.W. 47, it is said: 'The test is this: Suppose the judgment should be reversed, will the appellant thus hold *some substantial advantage to which she would not have been entitled had not the judgment been rendered?'* " [Emphasis added.]

The judgment in this case upheld the validity of the contract for deed as against Delphine's claim of fraud, undue influence, and mistake. By accepting the payment due under the contract for deed, Delphine exercised a right which existed prior to the judgment. No advantage was derived or benefit gained by the judgment which she was not already entitled to under the contract for deed. "It is only when an appellant accepts benefits of *the judgment* that an appellant will not be allowed to contest the judgment." *Bank of Beulah v. Chase,* 231 N.W.2d 738, 746 (N.D.1975).

The manner in which the Horobs tendered to Delphine the second payment under the contract for deed bypassed Delphine's counsel and may have effectively deprived her of the advice of counsel whom she retained to represent her in this matter. Under these circumstances, Delphine's acceptance of $10,000, an amount of money not unduly significant in light of the entire contract, does not clearly reveal an intention to acquiesce in the judgment.

For these reasons, we hold that Delphine has not waived her right to appeal. The motion to dismiss is denied.

## II.

The sole issue raised on appeal by Delphine is: "Did the Trial Court commit prej-

---

1. Other exceptions to the general rule have been recognized by this Court, in the context of divorce proceedings, which we need not discuss here. *See Geier v. Geier,* 332 N.W.2d 261 (N.D. 1983); *Sanford v. Sanford,* 295 N.W.2d 139 (N.D.1980); *Hoge v. Hoge,* 281 N.W.2d 557 (N.D. 1979); *Piper, supra.*

udicial error in allowing testimony regarding the financial status of Plaintiff?"

During the course of trial Larry testified that Estin had instructed him, on March 3, 1983, after the execution of the instruments, to help Delphine sort by maturity date certain certificates of deposit owned by Estin because "Estin wanted his name to be taken off of the certificates and put in just Delphine's name." Delphine's counsel objected, on relevancy grounds, to testimony elicited from Larry concerning the *value* of the certificates of deposit:

"Q How many dollars' worth were there?

"A [Larry:] About—

"MS. POPE: Object.

"MR. NEGAARD: Your Honor, the witness can testify.

"THE COURT: What is the objection?

"MS. POPE: Well, I am wondering as to relevancy as far as the Defendant— not the Defendant, but Mr. Sulsky's wellbeing is concerned.

"THE COURT: Overruled.

"Witness may answer.

"THE WITNESS [Larry]: There was approximately $653,000 worth.

    *    *    *    *    *    *

"Q Did you ever realize that your uncle had that much money?

"A No, I didn't.

"Q Were you surprised to see that much money there?

"A Yes, I was."

Delphine contends that Larry's testimony concerning the value of the certificates of deposit given to her by Estin was irrelevant and prejudicial; that the jury may have denied Delphine the relief she sought on the basis that she was "wealthy enough."

The notion that Delphine was "wealthy enough" was never specifically expressed by anyone at trial, except by Delphine's own counsel in her cross examination of Larry concerning a visit he had with Estin in February, 1983:

"A [Larry:] ... [H]e [Estin] said, 'I want to sell you the farm now.' He said,

'I don't need them no more,' he said, 'because I got too much money.'

And he says, 'I have to get rid of some.'

"Q Too much money? He had too much money?

"A Yeah.

"Q Would you agree with that?

"A I would say yes.

"Q He had too much money?

"A After I had seen what he had in certificates.

"Q That is another thing. You mentioned that figure of $653,000. *Was that your intention to convey to the jury that my client is—do you think that is enough money?*

"A No, that is what my uncle had."

■ It is incumbent upon the party contesting the admission of evidence to show that the error complained of was prejudicial. *Powers v. Martinson*, 313 N.W.2d 720, 730 (N.D.1981); *Haider v. Finken*, 239 N.W.2d 508, 518 (N.D.1976). Two decisions of the Court, *Neibauer v. Well*, 319 N.W.2d 143 (N.D.1982), and *Thornburg v. Perleberg*, 158 N.W.2d 188 (N.D.1968), are cited by Delphine for the broad proposition that reference at trial to the wealth or poverty of the parties constitutes reversible error. In *Neibauer, supra,* we concluded that the trial court did not abuse its discretion in granting a new trial in a personal injury action on the ground that the plaintiff's unsolicited and inadvertent reference to insurance constituted prejudicial error. Pursuant to Rule 411, N.D.R.Ev., evidence of insurance is inadmissible to prove negligence or other wrongful action but need not be excluded if offered for another purpose to which it may be relevant. In *Thornburg, supra,* we held that the trial court erred in allowing the plaintiff in a personal injury action to testify that she had not had certain dental work done before trial because she could not afford to have it done. We relied, in *Thornburg*, upon the general rule that it is error to inquire as to the financial condition of either party in a personal injury action in which only compensatory damages may be

awarded, and where there is no basis for an award of punitive damages.

Ordinarily, the financial condition of a party is not involved in a case and is irrelevant, and under such circumstances such evidence is inadmissible; however, when relevant to issues in the case evidence tending to prove the financial condition of a party may be admitted. *E.g., Eaton v. Sontag*, 387 A.2d 33, 38 (Me. 1978); *Bremen Bank & Trust Co. v. Bogdan*, 498 S.W.2d 306, 312 (Mo.App.1973). The test as to whether evidence is relevant or irrelevant is whether or not it would reasonably and actually tend to prove or disprove any matter of fact in issue. *Okken v. Okken Estate*, 348 N.W.2d 447, 450 (N.D.1984); *Mehus v. Thompson*, 266 N.W.2d 920, 923 (N.D.1978). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, N.D.R.Ev.; *State v. Unterseher*, 255 N.W.2d 882, 889 (N.D.1977). Applying these principles, we hold that the challenged evidence was properly admitted.

An issue at trial was whether or not the consent of Delphine to the contract for deed was procured through undue influence exercised by the Horobs. A finding of undue influence in a situation such as this requires that three factors be established: (1) A person who can be influenced; (2) The fact of improper influence exerted; and (3) Submission to the overmastering effect of such unlawful conduct. *Kronebusch v. Lettenmaier*, 311 N.W.2d 32, 35 (N.D.1981). The determination whether or not undue influence exists depends upon the circumstances of each case. *Hendricks v. Porter*, 110 N.W.2d 421, 429 (N.D.1961); *Johnson v. Johnson*, 85 N.W.2d 211, 221 (N.D.1957). At 25 Am.Jur.2d, *Duress and Undue Influence*, § 47, it is said:

"Undue influence is ordinarily not the subject of, and is seldom established by, direct evidence; rather, it is usually established by proof of a collection of facts and circumstances from which an inference of undue influence may be drawn. Therefore a great latitude of proof is allowed in order to determine whether a legal inference of undue influence may be present, and the evidence may embrace all the facts and circumstances which go to make up the transaction, disclose its true character, and explain the acts of the parties in order to throw light on their objects and intentions." [citing *Scurry v. Cook*, 206 Ga. 876, 59 S.E.2d 371, 373 (1950)]. *See, e.g., Johnson v. Keener*, 370 So.2d 265, 268 (Ala. 1979); *Cross v. Beckwith*, 293 N.C. 224, 238 S.E.2d 130, 136 (1977).

As indicated by the pleadings and testimony elicited at trial concerning the circumstances surrounding the transaction in this case, it is clear Estin's state of mind concerning the conveyance of his farm was a fact of consequence to the determination whether or not undue influence was exercised by the Horobs. Larry's testimony concerning the value of the certificates of deposit, and the close proximity in time between the execution of the instruments and Estin's request that Larry help Delphine sort the certificates, tended to prove that Estin was well aware that he had adequately provided for Delphine's future welfare. We believe that evidence that Estin provided, or failed to provide, for his daughter in light of the sale of the entire farm to the Horobs, was an appropriate consideration for the jury.

We find no error in the admission of the evidence under the circumstances of this case. Accordingly, the judgment is affirmed.

SAND, GIERKE and PEDERSON, JJ., concur.

VANDE WALLE, Justice, concurring specially.

I concur in the result reached in the majority opinion. I agree that the trial court did not commit prejudicial error in allowing testimony regarding the financial status of the plaintiff under the circumstances of this case.

I write separately to express my concern relative to the motion to dismiss. Although Sulsky may have taken nothing from the judgment of the trial court because the trial court did not rescind the contract for deed as she requested, it is nevertheless inconsistent to accept payments due under the contract for deed and, at the same time, appeal from a judgment holding the contract for deed valid. Under ordinary circumstances acceptance of payments due under the contract for deed would, at least to me, clearly reveal an intention to acquiesce in the judgment.

However, I agree with the majority opinion that under the circumstances of this case, wherein the second payment was tendered to Sulsky directly without knowledge of her counsel, dismissal of the appeal is not justified.