Kevin **OLMSTEAD** and Kelly Olmstead, **Plaintiffs and Appellees,**

v.

Charles S. **MILLER, Defendant and Appellant,**

**and**

The **Fargo National Bank & Trust Company, Defendant.**

**Civ. No. 11006.**

Supreme Court of North Dakota.

March 19, 1986.

---

David Garaas, Fargo, for plaintiffs and appellees.

Timothy J. McLarnan, of Gjevre, McLarnan, Hannaher, Vaa, Skatvold & McLarnan, Moorhead, Minn., for defendant and appellant.

VANDE WALLE, Justice.

Defendant Charles S. Miller appealed from a district court judgment entered on a jury verdict in a negligence action awarding plaintiffs Kevin and Kelly Olmstead total damages in the amount of $85,000, and from an order denying his motion for a new trial. We affirm the judgment as to liability, reverse as to damages, and remand for a new trial on the issue of damages alone.

On September 21, 1980, Miller, while president of the Fargo National Bank and Trust Company, was driving a bank-owned vehicle in the Edgewood Trailer Court in Fargo when it left the road and crashed into the Olmsteads' anchored trailer home. Miller was under the influence of alcohol at the time of the accident.

The Olmsteads were inside their trailer home when the accident occurred. According to Kevin, he was in the kitchen and was thrown over an island counter into an open refrigerator, breaking the shelves with his back. Kelly was in the hallway of the home and was bounced back and forth between the walls before falling to her knees. The Olmsteads were examined at a hospital emergency room after the accident and were released.

The Olmsteads sued Miller and the Fargo National Bank and Trust Company for their personal injuries and property damage sustained in the accident. The jury found no liability on the part of the Fargo National Bank and Trust Company, but found Miller negligent and awarded the Olmsteads compensatory damages in the amount of $60,000 and punitive damages in the amount of $25,000.

Miller raises numerous issues in this appeal, most of which relate to the award of damages. The issues raised which relate to liability were either conceded by Miller's counsel during oral argument or are without merit.[1] Accordingly, we affirm the judgment insofar as it holds Miller liable for the damage caused as a result of the accident.

Before reaching the dispositive issue in this case, we first consider Miller's assertion that the Olmsteads' action is governed by the terms of the North Dakota Auto Accident Reparations Act, Chapter 26–41, N.D.C.C. [commonly known as the No-Fault Act],[2] and that the plaintiffs failed to meet the threshold injury level prior to maintaining a tort action for personal injuries. Coverage under the No-Fault Act extends, in part, to accidental bodily injury

---

1. The Olmsteads' action against Miller was premised on theories of trespass and negligence. Although Miller in his brief to this court has attacked various aspects of the trial court's decision to direct a verdict against him on the issue of trespass, during oral arguments Miller's counsel conceded that he could not raise the trespass issue on appeal because they had admitted liability for trespass during trial. Miller's counsel told the jury during closing arguments:

"[W]hen you get to the question of damages in this case, and you'll get to that right away because we've always freely admitted that Mr. Miller is responsible for the damages that

directly ensued, and you must view those damages when you talk about damages just as though there was no alcohol involved in this case at all. Mr. Miller has admitted that he trespassed on that property on that particular day and that he caused that damages [sic] and at that point alcohol plays no part in this case."

2. Chapter 26–41, N.D.C.C., was repealed by the 1985 Legislature and was reenacted with some changes and recodified at Chapter 26.1–41, N.D.C.C. See 1985 N.D.Sess. Laws Ch. 316, § 18. In this case we are concerned with the provisions of Chapter 26–41, N.D.C.C.

sustained by persons while occupying any motor vehicle or "[w]hile a pedestrian as the result of being struck by a motor vehicle ..." § 26–41–07(1)(b), N.D.C.C. Miller asserts that the No-Fault Act is applicable in this case because the Olmsteads were "pedestrians" within the meaning of § 26–41–07(1)(b), N.D.C.C. We disagree.

A "pedestrian" is defined in § 26–41–03(13), N.D.C.C., as "any person not occupying any vehicle designed to be driven or drawn by power other than muscular power." It is not disputed in this case that the Olmsteads were occupying the trailer house, which was located in a residential trailer court, as their home at the time of the accident. Although the term "pedestrian" appears to be broadly defined in the Act, we do not believe the Legislature intended the term to encompass all persons injured by a motor vehicle regardless of the circumstances under which the injuries occurred.

■ Statutes must be construed to avoid absurd and ludicrous results, and if adherence to the strict letter of a statute would lead to such a result, the court may resort to extrinsic aids to interpret the statute. *County of Stutsman v. State Historical Soc.,* 371 N.W.2d 321 (N.D.1985). The term "pedestrian" generally connotes a person who is on foot and on or about a public highway or street where motor vehicle laws apply. See *Braswell v. Burrus,* 13 Md.App. 513, 284 A.2d 41 (1971). The

use of the term "pedestrian" in the No-Fault Act thus evinces a legislative intention that some practical limitation be placed upon its meaning. If the Legislature had intended the No-Fault Act to be applicable to anyone injured by a motor vehicle regardless of the circumstances, it could have done so through the use of a more generic term, rather than using "pedestrian," a word with such a limited connotation.

■ Although the Legislature may not have contemplated the particular type of accident which occurred in this case, a fair reading of the terms used in the No-Fault Act indicates that it would not have intended the Olmsteads to be considered "pedestrians" under the Act. Cf., *Weber v. State Farm Mut. Auto Ins. Co.,* 284 N.W.2d 299 (N.D.1979). Without attempting to specifically deliniate the precise parameters of when a person is or is not a "pedestrian" under the Act, we conclude that persons injured in an automobile accident while they are secure in their homes do not fall within the definition of "pedestrian" under §§ 26–41–03(13) and 26–41–07, N.D.C.C.[3] The Olmsteads' action is not governed by the terms of Chapter 26–41, N.D.C.C., and the trial court was correct in so concluding.

Miller asserts that the trial court erred in instructing the jury that it could award the Olmsteads damages for their future pain, discomfort, and mental anguish, the permanence of their injuries and the resultant

---

**3.** Miller relies on *Cotton States Mut. Ins. Co. v. Statiras,* 157 Ga.App. 169, 276 S.E.2d 853 (1981); *Kentucky Farm Bureau Mut. Ins. Co. v. Mason,* 600 S.W.2d 483 (Ky.Ct.App.1980); and *Fox v. State Auto. Mut. Ins. Co.,* 314 Pa.Super. 559, 461 A.2d 299 (1983), in support of his argument that the Olmsteads should be considered "pedestrians" under the circumstances. We find these cases unpersuasive. In *Statiras* and *Mason* the accidents in which the question arose occurred on or along public highways. Although *Fox, supra,* 461 A.2d at 301, involved a situation in which a motor vehicle crashed into the side of a home injuring an occupant, the issue in that case was whether the occupant of the home was a "victim" within the meaning of the No-Fault Act, which defined that term as "an individual who suffers injury arising out of the maintenance or use of a motor vehicle ..."

The Olmsteads have relied on *Smith v. Simpson,* 648 P.2d 677 (Colo.Ct.App.1982), in which the court held that the plaintiffs, who were asleep in their beds in their family home when the defendant lost control of her car and crashed into the home injuring them, were not "pedestrians" under the meaning of the Colorado No-Fault Act. We note that the Colorado Supreme Court in *Trinity Universal Ins. Co. v. Hall,* 690 P.2d 227 (Colo.1984), specifically overruled that portion of *Simpson* which limited the statutory definition of "pedestrian." We nevertheless find the reasoning of the *Simpson* court as applied to the facts of that case to be persuasive. *Hall* did not involve a plaintiff injured in the home but involved a situation in which the plaintiff was injured while buying refreshments from a truck parked at a farm auction off public highways when a collapsible side awning attached to the truck fell and struck her head.

future impairment of their earning capacities, and their future medical expenses. Miller contends that the Olmsteads did not present sufficient evidence to warrant submission of these elements of future damages to the jury. We agree.

No expert medical testimony was presented during the trial. Kevin testified that he continues to suffer from back and leg pains as a result of the accident, but admitted that he had not sought medical treatment for those injuries, nor undergone any course of medical treatment, during the four years following his initial emergency-room visit. Kevin stated that his "leg pains aren't as bad as they used to be but the back pain is the same." Kevin testified that in order to relieve his back pain his wife gives him back rubs at least once a day, which last "[a]nywhere from ten minutes to half an hour." Kelly testified that her physical injuries consisted of "[n]othing other than a stiffness for a few days." She further testified that after the accident she suffered from "an overall general feeling of sickness," which resulted in a loss of appetite and weight, inability to sleep, and a loss of friends. Kelly testified that she did see another physician concerning these problems after the initial emergency-room visit, but said that the doctor could find nothing physically wrong with her. Kelly testified that during the last eighteen months she had "settled down" and "tried to ease myself back into a normal routine."

Both Kevin and Kelly missed one day of work as a result of the accident. Kevin was attending college and had a part-time job at the time. He has since left college and has a full-time job. Kelly has been employed with the same company since the accident and has received promotions. Kevin's lost wages totaled approximately $25 and Kelly's lost wages totaled approximately $114.

In urging that it was error for the trial court to give instructions on future damages, Miller relies on the rule which is aptly summarized in 3 L. Frumer and M.

Friedman, *Personal Injury, Damages* § 3.03[2], at pp. 93–94 (1984):

"Whether the opinion of a medical expert is necessary to establish future loss, future pain and suffering, or permanent injury, depends on the nature of the injury. Obviously, such testimony is not required if the plaintiff has lost an arm, leg, eye, or has sustained any other injury that a layman is competent to ascertain on the basis of his common knowledge and experience. But where an injury is subjective in character and of such nature that a layman cannot with reasonable certainty know whether or not there will be future pain and suffering, there must be competent expert opinion testimony bearing on the permanency of such injury, or the likelihood that the injured person will endure future pain and suffering. The unsupported subjective statements of the injured party, not a medical expert, are not sufficient." [Footnotes omitted.]

For discussions of the case law in which this principle has been either implicitly or explicitly applied in regard to various elements of future damages, see Annot., 18 A.L.R.3d 10, *Sufficiency of evidence, in personal injury action, to prove future pain and suffering and to warrant instructions to jury thereon* (1968); Annot., 18 A.L.R.3d 88, *Sufficiency of evidence, in personal injury action, to prove impairment of earning capacity and to warrant instructions to jury thereon* (1968); and Annot., 18 A.L.R.3d 170, *Sufficiency of evidence, in personal injury action, to prove permanence of injuries and to warrant instructions to jury thereon* (1968).

We decline to adopt an absolute rule which would make submission of jury instructions on future damages in the absence of expert medical testimony dependent on a determination of whether a plaintiff's injuries fall within a "subjective" or "objective" category. Every case differs and we adhere to our view "that each case must be evaluated on its own particular facts and circumstances." *Cook v. Stenslie,* 251 N.W.2d 393, 398 (N.D.1977).

Future damages must be proved with reasonable certainty; they cannot be awarded on the basis of speculative possibilities or conjecture. See *Teegarden v. Dahl*, 138 N.W.2d 668 (N.D.1965); *Leonard v. North Dakota Co-op. Wool Market. Ass'n*, 72 N.D. 310, 6 N.W.2d 576 (1942); § 32-03-03, N.D.C.C. This court has held that there must be probative evidence of permanent injury before a jury can be instructed that impairment of future earning capacity is an item of general damages. *Spalding v. Loyland*, 132 N.W.2d 914 (N.D.1964). We have also held that in order for a plaintiff to recover for future medical services there must be "substantial evidence to establish with reasonable medical certainty that such future medical services are necessary." *South v. National R.R. Passenger Corp.*, 290 N.W.2d 819, 842 (N.D.1980). Damages based on the mere possibility of future medical treatment will not be allowed. *Holecek v. Janke*, 171 N.W.2d 94 (N.D.1969).

The Olmsteads in this case have failed to establish with any degree of certainty whatsoever that they will suffer future pain, discomfort or mental anguish, or that their injuries are permanent and will result in the impairment of their future earning capacities. Likewise, the Olmsteads presented no evidence to establish with reasonable medical certainty that future medical services will be necessary, or even what the possible cost of those future services might be. In view of the nature of the Olmsteads' injuries and the almost total absence of medical treatment required or even sought by the couple during the four years between the accident and trial, the submission of instructions on future damages allowed the jury to speculate not only as to the amount, but as to the very existence of any future damages. On the record before us, we conclude that the evidence was insufficient as a matter of law to warrant the trial court's instructions to the jury that it could award the Olmsteads damages for future pain, discomfort, and mental anguish, permanent injury and impairment of future earning capacity, and future medical expenses.[4]

In a special verdict form, the jury awarded the Olmsteads $60,000 in compensatory damages and $25,000 in punitive damages. Because it is impossible for us to determine from the verdict what amount of the damages the jury may have attributed to property damage, personal injuries up to the time of trial, and future damages, we conclude that the trial court's submission to the jury of the instructions on future damages constituted prejudicial error which requires that we reverse the award of compensatory damages. Because we reverse and remand this case for a new trial on the question of compensatory damages, we also consider it necessary under the circumstances to remand for a new trial on the question of punitive damages.

We are aware that there is no requirement in this jurisdiction that an award of punitive damages be reasonably proportionate to an award of compensatory damages. See *Smith v. American Family Mut. Ins. Co.*, 294 N.W.2d 751 (N.D.1980). We believe, however, that when a case is of such character that both compensatory and

---

4. In its order denying Miller's motion for a new trial, the trial court cited *Mabrier v. A.M. Servicing Corporation of Raytown*, 161 N.W.2d 180 (Iowa 1968), in support of its ruling that it was proper to instruct the jury on future damages under the circumstances of this case. In *Mabrier, supra*, 161 N.W.2d at 183, the court stated that "when pain is suffered right up to the time of trial and there is evidence plaintiff has not fully recovered, future pain and suffering may be submitted to the jury without medical testimony."

The nature of the injuries suffered and the evidence presented by the plaintiff in *Mabrier* differ considerably from the nature of the injuries suffered by the Olmsteads and the evidence they presented in support of their claim for future damages. Moreover, the fact situation in *Mabrier* does not necessarily support the rule purportedly applied by the Iowa court. The injury suffered by the plaintiff in *Mabrier, supra*, necessitated the surgical removal of her left kneecap, and her orthopedic surgeon testified at trial that " '[plaintiff] would have permanent physical impairment in her left lower extremity.' "

punitive damages may be assessed, better practice and procedure require that the right to and assessment of both should be simultaneously considered by the same jury. See *DuPuis v. 79th Street Hotel, Inc.*, 231 So.2d 532 (Fla.Dist.Ct.App.1970); *Kaplan v. Bach*, 36 Md.App. 152, 373 A.2d 71 (1977). We therefore remand this case for a new trial on the issue of both compensatory and punitive damages.[5]

Our disposition of this case makes it unnecessary to consider the many other issues raised by Miller. However, because one of the remaining issues might possibly arise on retrial of the issue of damages, we offer the following observations.

Miller has asserted that the trial court erred when it allowed the Olmsteads to introduce evidence that they were unable to pay many of their bills and to argue their desperate financial condition to the jury during closing arguments. In its order denying Miller's motion for a new trial, the trial court stated that the testimony and argument were allowed "because of the element of mental anguish and the prayer for punitive damages," citing *Dahlen v. Landis*, 314 N.W.2d 63 (N.D.1981).

In *Sulsky v. Horob*, 357 N.W.2d 243, 248 (N.D.1984), we stated that "[o]rdinarily, the financial condition of a party is not involved in a case and is irrelevant, and under such circumstances such evidence is inadmissible; however, when relevant to issues in the case evidence tending to prove the financial condition of a party may be admitted." This court had held that evidence of a defendant's wealth or lack of wealth may properly be considered by the jury when fixing punitive damages. *Dahlen, supra; Tice v. Mandel*, 76 N.W.2d 124 (N.D.1956); *King v. Hanson*, 13 N.D. 85, 99 N.W. 1085 (1904). However, *Dahlen* does not stand for the proposition that the plaintiff's wealth or lack of wealth is a proper consideration for the jury when awarding punitive damages.

The purpose of awarding punitive damages is to punish the wrongdoing defendant in order to deter him, and others, from repetition of the wrongful conduct. *Dahlen, supra.* While the defendant's financial condition will necessarily have a bearing on the amount that will serve as meaningful punishment of the defendant, the poverty or wealth of the plaintiff is irrelevant to this consideration. We agree with those jurisdictions which hold that evidence of the plaintiff's pecuniary circumstances cannot be considered by the jury in assessing punitive damages. *E.g., Griser v. Schoenborn*, 109 Minn. 297, 123 N.W. 823 (1909); *Smith v. Weber*, 70 S.D. 232, 16 N.W.2d 537 (1944); *Herstein v. Kemker*, 19 Tenn.App. 681, 94 S.W.2d 76 (1936). We note, however, that in cases where punitive damages are sought and the plaintiff's wealth or lack of wealth may have relevance to some other aspect of the case, the trial court should carefully exercise its discretion and weigh the probative value of that evidence against the danger of unfair prejudice to the defendant. See Rule 403, N.D.R.Evid.

The judgment and the trial court's order denying Miller's motion for a new trial are reversed, and the case is remanded for a new trial on the issue of damages only.

ERICKSTAD, C.J., and LEVINE and GIERKE, JJ., concur.

MESCHKE, Justice, concurring and dissenting.

I concur that Miller is liable and that Olmsteads' action is not controlled by Chapter 26–41, N.D.C.C. But, I would hold that the evidence was sufficient to warrant submission to the jury of Olmsteads' claim of damages for future suffering and medical expenses. I would also hold that evidence of the plaintiffs' pecuniary circumstances was properly admitted. And, since plaintiffs are obviously entitled to compensatory damages, there is no reason to vacate the award of punitive damages.

---

5. Because we have concluded that the evidence was insufficient as a matter of law to warrant submission to the jury of the instructions on future damages, we likewise conclude that the trial court abused its discretion in denying Miller's motion for a new trial.

Kevin testified that the physical effects of his injury continued up to the date of trial. This evidence demonstrated a continuing physical effect, however modest. For me, that is sufficient evidence to warrant consideration by the jury of future pain and suffering. It does not require an expert to infer that discomfort that has continued for months will, more likely than not, continue in the future.

Our prior cases support the submission of this issue to the jury. In *Olson v. Wetzstein*, 58 N.D. 263, 225 N.W. 459 (1929), the plaintiff did not offer medical testimony as to the effects of his injury while the defendant had three doctors who testified from their examination of plaintiff that it was only a temporary injury. After the plaintiff testified as to his continuing injury, the court instructed the jury that they could take into consideration whether plaintiff's injury was temporary or permanent. On appeal, the defendants claimed this instruction was error because of the lack of medical testimony. In *Olson*, this Court stated:

"The plaintiff had testified to continuous weakness of the arm—weakness existing at the time of the trial and which appeared to show no improvement—and inability to lift and grip as before. He was not required to submit medical testimony on his own behalf, though the absence of such testimony could be considered by the jury. The jury had the right also to consider the uncertainty expressed by the physicians as to the future. The rule as to experts stated in *Axford v. Gaines*, 50 N.D. 341, 195 N.W. 555, is applicable here. It was proper for the court to submit the character of the disability to the jury and leave it to the jury to determine whether under all the circumstances of the case the injuries would probably continue over such a length of time as to be termed permanent in the common vernacular." 225 N.W. at 461.

Similarly, in *Nichols v. Kluver*, 61 N.D. 42, 237 N.W. 640 (1931), this Court recognized:

"It can hardly be said that there was no evidence whatever from which it might be deduced that the plaintiff would be subject to pain and suffering in the future, or that to some degree his injuries would not be permanent. The most that can be said is that there is no expert testimony or opinion testimony of experts to this effect. There was no request that the court instruct the jury that there was no evidence justifying a finding on these questions. It is not at all clear that it can be said upon the record here that any error was committed in the instruction as given. In any event, we are agreed that no prejudice could have resulted therefrom." 237 N.W. at 643.

And, in *Clark v. Josephson*, 66 N.W.2d 539, 548 (N.D.1954), this Court stated:

"Medical testimony may be used for the purpose of increasing or minimizing the amount of damages. Blashfield Cyclopedia of Automobile Law and Practice, Volume 10, Part I, Section 6421. We have not found, nor has appellant pointed to any cases holding that substantial damages may not be awarded in absence of medical testimony."

I would hold that when pain or distress is suffered from the time of the injury to the time of trial, damages for future pain, discomfort and mental anguish, as well as future medical expenses, may be inferred by the jury without medical testimony. As to the claim that this verdict for compensatory damages is excessive, I would reiterate what was said in *Dahlen v. Landis*, 314 N.W.2d 63, 68 (N.D.1981):

"As we have said many times, the determination of damages for pain and suffering and comparable losses is not susceptible of an arithmetical calculation. Its ascertainment must, to a large degree, depend upon the common knowledge, good sense and practical judgment of the jury. [citation omitted] The jury heard [the] ... testimony and saw him on the witness stand. The trial court reviewed the evidence carefully and, with the advantage of having seen and heard the

witnesses, concluded that there was sufficient evidence to sustain the jury's award of compensatory damages. We cannot say that the trial court abused its discretion in concluding that the ... award of compensatory damages was not excessive."

There was evidence of actual injuries to these plaintiffs, not only for personal injuries but for the damage to their mobile home. Therefore, even if the verdict for compensatory damages is set aside and remanded for a new trial, there is no reason to vacate the award for punitive damages. Our statute, N.D.C.C. § 32–03–07, does not require actual damages to flow from the tort before punitive damages can be assessed. *See Lipinski v. Title Insurance Company*, 202 Mont. 1, 655 P.2d 970, 977 (1982). And, an award of punitive damages should stand where a plaintiff is entitled to compensatory damages even if, for some reason, no actual award of compensatory damages is made. *James v. Public Finance Corporation*, 47 Cal.App.3d 995, 121 Cal.Rptr. 670 (1975); *Fauver v. Wilkoske*, 123 Mont. 228, 211 P.2d 420, 427 (1949). *See also,* Annot., 17 A.L.R.2d 527, *Actual damages as a necessary predicate of punitive or exemplary damages* (1951), particularly at 539.

Whether plaintiffs' pecuniary circumstances should be considered by the jury is a difficult question of first impression in North Dakota. Although the cases cited in Justice VandeWalle's opinion do support his conclusion, there are other decisions which suggest that evidence of the plaintiffs' financial circumstances is relevant to the issue of punitive damages: *Grable v. Margrave*, 4 Ill. (3 Scam.) 372 (1842); *Heneky v. Smith*, 10 Or. 349, 45 Am.Rep. 143 (1882); *Utlaut v. Flick Real Estate Company, Inc.*, 246 S.W.2d 760, 764 (1952). 22 Am.Jur.2d. *Damages* § 322 (1965) states that "[a]s a general rule, evidence of the plaintiff's pecuniary circumstances is admissible where the case is such as will justify the award of exemplary or punitive damages, although there is some authority to the contrary."

Because the circumstances of both parties may often be relevant to issues of exemplary damages against a defendant, I would hold that the trial court has broad discretion to admit such evidence pursuant to Rules 103, 401, 402 and 403, N.D.R.Ev., and did not commit reversible error in admitting such evidence here.

Normally, a jury will be cognizant of a plaintiff's circumstances anyway. Any jury is going to recognize the difference between a janitor and a General Motors seeking punitive damages, just as they knew the difference between the farm laborer and the farmer in *Dahlen v. Landis, supra.* Direct evidence on the subject should be better than speculative inferences which jurors may make from appearances alone.

But, more importantly, it seems to me that the circumstances of both parties are relevant to awarding exemplary damages "for the sake of example and by way of punishing the defendant." N.D.C.C. § 32–03–07. How can "oppression" be measured without considering all of the circumstances of the one "oppressed"? The wantonness of a defendant's misconduct cannot be measured without considering its impact on the injured party, and that impact necessarily includes consideration of the injured party's circumstances. A person of modest means, who lives from paycheck to paycheck suffers greater distress from economic injuries than one who can comfortably cover unexpected bills. A jury should be able to consider the economic anguish of a plaintiff as well as the economic ability of a defendant in assessing exemplary damages.

This brings us back to another rationale of the trial court, which Justice VandeWalle's opinion implicitly recognizes: a plaintiff's financial circumstances are often relevant to the scope of the injuries for compensatory damages. Thus, evidence of the plaintiffs' circumstances is frequently admissible for another reason, so the jury will consider the circumstances anyway in setting exemplary damages. The trial court noted this additional reason in its memorandum opinion denying defendant's

motion for a new trial, when it observed that "the court allowed such testimony because of the element of mental anguish" in addition to its bearing on punitive damages. I believe that the trial court's ruling should be upheld for this reason as well.

Few young people, dependent upon a regular paycheck to meet their bills and living expenses, can afford to lay in bed and nurse their bruises and hurts. I believe the fact that these plaintiffs promptly returned to work, while suffering bruises and pain from the injuries inflicted by the defendant, demonstrates that they are not malingerers, rather than suggesting any minimal nature of their injuries. "Working hurt" is more common among people who work than "playing hurt" is in professional sports. We should neither penalize the stoic efforts of these plaintiffs, nor reward the misconduct of this defendant, by substituting our own view of the seriousness of Olmsteads' injuries for the conclusions of the jury and the trial judge.